**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES L. QUARRELL,

    Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL QUARRELL,

    Defendant - Appellant.

No. 01-2286

No. 01-2293

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 00-CR-322-JC)**

Robert E. Kinney, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender, and Shari Lynn Allison, Research and Writing Specialist, with him on the brief), Las Cruces, New Mexico, for the Defendant-Appellant James L. Quarrell.

Angela Arellanes, Albuquerque, New Mexico, for the Defendant-Appellant Michael Quarrell.

Peter M. Ossorio, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Las Cruces, New Mexico, for the Plaintiff-Appellee.

---

Before **BRISCOE**, **McWILLIAMS** and **McKAY,** Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

James L. Quarrell and Michael Quarrell appeal their convictions of violating the Archaeological Resources Protection Act (ARPA), 16 U.S.C. §§ 470aa *et seq.*, and conspiring to violate ARPA pursuant to 18 U.S.C. § 371, and the sentences imposed. The Quarrells argue (1) the district court erred in not requiring the government to prove the Quarrells knew they were excavating on public land; (2) the court erred in not allowing the Quarrells to present a defense based upon their belief that they were excavating on private land; and (3) the court did not have authority to order restitution and, alternatively, the amount awarded was an abuse of discretion. In addition, James argues the court erred in enhancing his sentence for obstruction of justice, and Michael argues the court should have granted him credit for acceptance of responsibility. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm the Quarrells' convictions, but remand to the district court for resentencing in accordance with this opinion.

I.

James Quarrell, his brother Michael Quarrell, and their cousin, Aaron Sera, were arrested for vandalizing an archaeological site in the Gila National Forest in southern

2

New Mexico. The site where they were apprehended has been public property since 1967 and is known as the East Fork site, a Mimbres-Mogollon ruin that covers approximately 2.7 acres. Prior to the arrest, a forest service officer had installed a remote sensor at the road closest to the site after she noticed boot tracks and fresh holes at the site. When the sensor was activated a few weeks later, officers found the Quarrells and Sera excavating the site. Among their possessions were backpacks and sleeping bags, a specialized probe used to determine the alignment of rock walls, shovels, a firearm, and pieces of Mimbres pottery. In addition, the tread on James' boots matched the tracks the officer previously had seen at the site. Sera pleaded guilty to a misdemeanor violation of ARPA.

The Quarrells stipulated that they were familiar with Mimbres archaeology and art; they knew they were digging in a prehistoric Mimbres Pueblo; they intended to excavate and remove Mimbres artifacts; and they had not received or applied for a permit from the Forest Service to excavate the site. Prior to trial, the government filed a motion to preclude the Quarrells from presenting evidence and arguing as a defense that they did not know they were excavating on public land. The court ruled that the government was not required to prove the Quarrells knew they were on public land, but opined that the Quarrells could present evidence that they thought they were lawfully excavating private land. The Quarrells presented no evidence to support a mistake of fact defense, and the only issue at trial was whether they caused damage over the felony threshold amount of $500. The jury found that the Quarrells caused damages in excess of $500 and found

3

them guilty of excavating in violation of ARPA, and guilty of conspiring to excavate in violation of ARPA.

The district court sentenced the Quarrells to concurrent terms of twelve months and one day, followed by one year of supervised release. The court enhanced their sentences for obstruction of justice because they perjured themselves at trial, and denied a sentence reduction for acceptance of responsibility. The Quarrells were each ordered to pay restitution in the amount of $4,362 for repair and restoration of the site and $15,253 for archaeological damage of the site. Their sentences have been stayed pending the outcome of this appeal.

## II.

*Mens Rea*

The Quarrells contend the district court erred in its reading of ARPA because it did not require the government to prove the Quarrells knew they were excavating on public land. We review the district court's interpretation of a federal statute *de novo*. United States v. Fillman, 162 F.3d 1055, 1056 (10th Cir. 1998). When interpreting the language of a statute, the starting point is always the language of the statute itself. In re Geneva Steel Co., 281 F.3d 1173, 1178 (10th Cir. 2002). If the language is clear and unambiguous, the plain meaning of the statute controls. Id. A statute is ambiguous when it is "capable of being understood by reasonably well-informed persons in two or more different senses." Id. (internal quotations omitted). If an ambiguity is found, "a court

4

may seek guidance from Congress's intent, a task aided by reviewing the legislative history." Id. A court can also resolve ambiguities by looking at the purpose behind the statute. Id.

Whether the government must prove as an element of 16 U.S.C. § 470ee(a) that a defendant knew he or she was excavating on public land is an issue of first impression. The relevant section of ARPA states:

> (a) Unauthorized excavation, removal, damage, alteration, or defacement of archaeological resources
> No person may excavate, remove, damage, or otherwise alter or deface, or attempt to excavate, remove, damage, or otherwise alter or deface any archaeological resource located on public lands or Indian lands unless such activity is pursuant to a permit . . . .
> (b) Trafficking in archaeological resources the excavation or removal of which was wrongful under Federal law
> No person may sell, purchase, exchange, transport, receive, or offer to sell, purchase, or exchange any archaeological resource if such resource was excavated or removed from public lands or Indian lands in violation of–
> (1) the prohibition contained in subsection (a) of this section, or
> (2) any provision, rule, regulation, ordinance, or permit in effect under any other provision of Federal law.
> (c) Trafficking in interstate or foreign commerce in archaeological resources the excavation, removal, sale, purchase, exchange, transportation or receipt of which was wrongful under State or local law
> No person may sell, purchase, exchange, transport, receive, or offer to sell, purchase, or exchange, in interstate or foreign commerce, any archaeological resource excavated, removed, sold, purchased, exchanged, transported, or received in violation of any provision, rule, regulation, ordinance, or permit in effect under State or local law.
> (d) Penalties
> Any person who knowingly violates, or counsels, procures, solicits, or employs any other person to violate, any prohibition contained in subsection (a), (b), or (c) of this section shall, upon conviction, be fined . . . or imprisoned . . . or both.

5

16 U.S.C. § 470ee(a)-(d) (2002). The Quarrells were convicted of violating subsection (a). The *mens rea* for this section is provided in subsection (d). Thus, to be convicted, the Quarrells must have "knowingly" violated subsection (a). The parties disagree as to whether "knowingly" extends to each element of subsection (a), including the requirement that the archaeological resource be located on public or Indian lands. The Quarrells argue that "knowingly" refers to each element of subsection (a), including the "located on public lands" requirement. The government argues that "knowingly" does not extend to the "located on public lands" requirement because the location of the charged acts is a jurisdictional element.

The government contends that if it is required to show a defendant knew that he or she was on public land under subsection (a), it follows that the government would be required to establish knowledge of the interstate or foreign commerce element in subsection (c). However, establishing a defendant's knowledge of the interstate or foreign commerce element is generally not required. See, e.g., United States v. Levine, 41 F.3d 607, 617 n.12 (10th Cir. 1994) ("[W]e feel the proper interpretations of [18 U.S.C.] § 1365(b) do not impose a scienter requirement with respect to the jurisdictional element of having an effect on interstate or foreign commerce."). Because reasonable arguments can be made supporting each interpretation of the statute, the statute is ambiguous.

In enacting ARPA, Congress stated that archaeological resources on public lands are "irreplaceable part[s] of the Nation's heritage," and "these resources are increasingly

6

endangered because of their commercial attractiveness." 16 U.S.C. § 470aa(a)(1)-(2). In addition, Congress found that "existing Federal laws do not provide adequate protection to prevent the loss and destruction of these archaeological resources and sites resulting from uncontrolled excavations and pillage." Id. § 470aa(a)(3). Congress' explicit purpose in enacting ARPA was to "secure, for the present and future benefit of the American people, the protection of archaeological resources and sites which are on public lands and Indian lands." Id. § 470aa(b). In addition, Congress encouraged federal land managers "to carry out an active public information program and to publish the appropriate prohibitions and warnings in their respective brochures, maps, visitor guides, and to post signs at entrances to public lands." H.R. Rep. No. 96-311, at 1711 (1979). However, Congress explicitly authorized land managers to conceal the nature and location of any archaeological resource unless the land manager determined that disclosure would "not create a risk of harm to such resources or to the site at which such resources are located." 16 U.S.C. § 470hh(a)(2).

Neither the legislative history nor the purpose behind the statute directly answers the issue of whether the government must prove that the defendant knew he or she was on public land in order to establish a § 470ee(a) violation. However, extending the *mens rea* requirement to the "located on public lands" element would frustrate the purpose of the Act. For example, it would often be difficult for the government to prove that a defendant knew he was on public land unless signs were posted at or near the

7

archaeological site. Placing signs near sites, however, would draw the attention of potential looters. Archaeological sites in the Gila National Forest are kept confidential to protect the sites from vandalism, especially since, at the time of the offenses, there were only two law enforcement officers patrolling approximately three million acres of public land. Congress' desire that land managers inform the public of the Act's requirements does not indicate that Congress intended to convict only those offenders who knew they were on public land. A public information campaign simply furthers the purpose of the Act by informing the public of ARPA's prohibitions.

Because neither the language of the Act nor the Act's legislative history and purpose answer the issue, the Quarrells turn to a line of Supreme Court cases to support their position. In Staples v. United States, 511 U.S. 600, 619 (1994), the Court held that in order to convict a defendant for possession of an unregistered firearm under 26 U.S.C. § 5861(d), the government must prove the defendant knew the weapon he possessed had the automatic firing features that brought it within the scope of the National Firearms Act. The section the Court was interpreting was silent as to the *mens rea* required to find a violation. Id. at 605. However, the Court refused to dispense with a *mens rea* requirement where doing so would "criminalize a broad range of apparently innocent conduct." Id. at 610 (internal quotations omitted). The Court stated that "guns generally can be owned in perfect innocence" and "there is a long tradition of widespread lawful gun ownership by private individuals in this country." Id. at 610-11.

8

In United States v. X-Citement Video, Inc., 513 U.S. 64, 67-68 (1994), the Court interpreted the Protection of Children Against Sexual Exploitation Act of 1977, 18 U.S.C. § 2252(a), which prohibits "knowingly" transporting, shipping, receiving or distributing any visual depiction, if such "visual depiction involves the use of a minor engaging in sexually explicit conduct." The Court refused to "simply follow the most grammatical reading of the statute," id. at 70, and held that in order to be convicted under the statute, the defendant must have known that one of the performers was a minor. Once again, the Court was concerned that dispensing with the *mens rea* requirement would criminalize "otherwise innocent conduct." Id. at 72. The Court cited First Amendment protections and stated that "the age of the performers is the crucial element separating legal innocence from wrongful conduct." Id. at 73; see also Liparota v. United States, 471 U.S. 419, 426, 433 (1985) (holding that the government must show the defendant knew his possession of food stamps was in an unauthorized manner because "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct").

These cases are distinguishable. Unlike a citizen owning a firearm unaware of its automatic firing capabilities, or a distributor of sexually-explicit materials unaware of the age of its performers, a person excavating on someone else's land, whether public or private, cannot reasonably expect to be free from regulation. In Staples, the Court opined that because of the long tradition of lawful gun ownership, gun owners are not sufficiently on notice of the likelihood of regulation to warrant dispensing with the

9

scienter requirement. 511 U.S. at 611-12. Excavating for archaeological resources has not enjoyed a similar tradition. Since the Antiquities Act of 1906, 16 U.S.C. §§ 431-33, it has been a crime to excavate for historic ruins on government land without express permission from the government. Moreover, "there is no right to go upon another person's land, without his permission, to look for valuable objects buried in the land and take them if you find them." United States v. Gerber, 999 F.2d 1112, 1115-16 (7th Cir. 1993). One would anticipate that excavating for archaeological resources on another person's land, whether private or public, would not be viewed as an innocent act. Indeed, when Michael was apprehended, he stated that "he would have to take his licks this time and be more careful next time." ROA, Vol. III at 111. Accordingly, this is not a situation involving a need to apply a *mens rea* requirement to "each of the statutory elements that criminalize otherwise innocent conduct." X-Citement Video, 513 U.S. at 72.

The Quarrells also cite United States v. Lynch, 233 F.3d 1139 (9th Cir. 2000), to support their position. In Lynch, the court interpreted the *mens rea* requirement of ARPA. The case involved a defendant who was deer-hunting on public land when "he saw a human skull partially exposed and partially covered by soil." Id. at 1140. The defendant scraped away the dirt and lifted the skull from the soil. After a lengthy investigation, it was determined that the skull was 1400 years old. The defendant was charged with violating ARPA, 16 U.S.C. § 470ee(a). Id. The issue was whether the Act required the defendant to know that the removed skull was an "archaeological resource,"

10

as defined by ARPA. The court looked to the legislative history and Congress' concern with prosecuting the "intentional destruction . . . and intentional theft of the valuable remains of previous civilizations," and not the "casual visitor who happens to find some exposed artifact." Id. a 1142. In addition, echoing the concerns of Staples and X-Citement Video, the court worried about punishing otherwise innocent conduct because "a skull may or may not be an archeological resource." Id. at 1143. The court held that the knowledge requirement applied to the "archaeological resources" element. Id. at 1144.

This case is also distinguishable from Lynch. Requiring a defendant to know the object he is removing is an archaeological resource protects against convicting the casual visitor, like a Boy Scout, who picks up an object unaware that it is a prehistoric artifact. It is unclear, however, how requiring a defendant to know the status of the land he is excavating will further Congress' desire to avoid punishing the casual visitor or prevent punishing otherwise innocent conduct. The Quarrells, unlike the casual visitor, knew they were excavating and knew they were removing valuable archaeological resources from the land. This is precisely the activity Congress intended to prevent and punish when it enacted ARPA.

The present case is analogous to a line of precedent starting with United States v. Feola, 420 U.S. 671 (1975). In Feola, the Court held that the government was not required to prove that the defendants knew the undercover agents they assaulted were

11

federal officers in order to be convicted under 18 U.S.C. § 111.  Id. at 684.  The Court

reasoned:

> This interpretation poses no risk of unfairness to defendants.  It is no snare for the unsuspecting.  Although the perpetrator of a narcotics 'rip-off,' such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful.  The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected.  In a case of this kind the offender takes his victim as he finds him.  The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.

Id. at 685.

This court followed the Feola reasoning in United States v. Speir, 564 F.2d 934

(10th Cir. 1977), and in United States v. Montoya, 716 F.2d 1340 (10th Cir. 1983).  In

Speir, the defendants were convicted under 18 U.S.C. § 641 for stealing Christmas trees

from a national forest.  Their argument, similar to the argument here, was that the

government was required to prove they knew the trees were government property.  We

opined that the requirement in the statute that the stolen property be property of the

United States "furnishes the jurisdictional basis for the federal offense."  564 F.2d at 938.

Citing Feola, we stated that "knowledge of such jurisdictional facts is not generally an

element of the required intent under federal statutes."  Id.  Thus, we held that the

government need not prove the defendants knew the trees were government property.  As

part of our analysis, we stated that "it was not an essential part of the common law

12

larceny-type offense that the thief knew who owned the property he took; it was enough that he knew it did not belong to him." Id. (internal quotations omitted).

In Montoya, the defendant was convicted for presenting false claims to the federal government in violation of the False Claims Act, 18 U.S.C. § 287. The defendant was unaware that the false information he submitted would be transmitted to a federal agency. He argued that he could not be convicted under the Act because he did not know of the federal involvement. We rejected this argument and held that "ignorance of the federal presence does not negate the requisite mens rea for a § 287 violation – the intent to present a fraudulent claim." Id. at 1345; see also Levine, 41 F.3d at 617 n.12 ("As in [Feola], we feel the proper interpretations of [18 U.S.C.] § 1365(b) do not impose a scienter requirement with respect to the jurisdictional element of having an effect on interstate or foreign commerce."); United States v. Balano, 618 F.2d 624, 630 (10th Cir. 1979) ("We do not require the government to prove the defendant's knowledge of jurisdictional elements."); United States v. Newson, 531 F.2d 979, 982 (10th Cir. 1976) (holding knowledge of jurisdictional element not required).

Like the status of the federal officers in Feola, or the Christmas trees in Speir, the fact that the Quarrells were excavating and damaging artifacts on public land is best described as a jurisdictional element. Moreover,

*[t]he situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require that the*

13

> *actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.*

Feola, 420 U.S. at 685 (emphasis added). Following the Feola line of precedent, the knowledge requirement of ARPA does not extend to the "located on public lands or Indian lands" element of the statute.

The Quarrells argue that the rule of lenity should apply, under which ambiguous penal statutes are construed in favor of the accused. Fillman, 162 F.3d at 1058. However, "[t]he rule's application is limited to cases where, after reviewing all available relevant materials, the court is still left with an ambiguous statute." Id. After reviewing the legislative history, the purpose behind the statute, and the relevant case law, we conclude that the rule of lenity is inapplicable to this case. The district court correctly interpreted ARPA by not requiring the government to prove the Quarrells knew they were on public land as an element of the crime.

*Mistake of Fact Defense*

The Quarrells argue the district court erred in not allowing them to present a defense based on their belief that they were excavating on private, not public, land. ARPA is silent as to the defenses available. In interpreting a statute, a court may look to related statutes to ascertain Congress' intent. Fillman, 162 F.3d at 1057. This rule of statutory construction "assumes that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject." Id. (quoting Erlenbaugh v. United

14

States, 409 U.S. 239, 244 (1972)).  ARPA superseded the Antiquities Act of 1906.

Therefore, we may look to this prior statute to determine whether a mistake of fact

defense is available.  Although the Antiquities Act is silent on this issue, its case law

provides some insight.

The case of United States v. Smyer, 596 F.2d 939 (10th Cir. 1979), involved a

prosecution under the Antiquities Act.  In Smyer, the defendants, like the Quarrells, were

caught excavating prehistoric Mimbres ruins in the Gila National Forest.  Although not

discussed in detail, the trial court permitted the defendants to present a defense based on

their belief that they were not on public land.  After a bench trial, the trial court rejected

the defense on the merits because the evidence indicated the defendants knew they were

excavating on public land, and we affirmed.  It is unclear from the opinion, however,

whether the district court allowed the defendants to simply argue they thought they were

on private land, or whether they were required to establish they thought they were on

private land *with permission*.

In Feola, the Supreme Court stated that, even though the defendants were not

required to know the undercover agent was a federal officer, their lack of knowledge

might still be relevant as a mistake of fact defense:

> We are not to be understood as implying that the defendant's state
> of knowledge is never a relevant consideration under § 111.  The statute
> does require a criminal intent, and there may well be circumstances in
> which ignorance of the official status of the person assaulted or resisted
> negates the very existence of mens rea.  For example, where an officer
> fails to identify himself or his purpose, his conduct in certain

15

circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

420 U.S. at 686.

In United States v. Sawyers, 186 F. Supp. 264 (N.D. Cal. 1960), the defendant was convicted for cutting and removing timber from public land. In addressing the issue of whether the defendant had to know he was cutting on public land, the court stated:

[I]t is open to the defendant to show that the timber was cut or removed under the well-grounded belief that it was from lands other than those of the United States. Proof of such a mistake of fact, honestly and conscientiously made, would be a defense to the charge in this case, but it is not necessary for the Indictment to negative such defensive matter.

Id. at 266.

We agree with the reasoning in Feola and Sawyers and hold that a defendant charged with violating ARPA may present a mistake of fact defense. After the government establishes an ARPA violation, the defendant should be allowed to argue a mistake of fact defense based on his reasonable belief that he was excavating on private land *with permission*. The defendant must establish that he reasonably believed he was *lawfully* excavating on private land because such "an honest mistake of fact would not be consistent with criminal intent." Feola, 420 U.S. at 686. However, if a defendant merely argues that he thought he was excavating on private land, such a mistake of fact would not negate criminal intent because such conduct is unlawful. In addition, a defendant, like the defendant in Sawyer, must present evidence that his mistake of fact was "honestly

16

and conscientiously made." 186 F. Supp. at 266.

As the government points out, however, the Quarrells were not prohibited from presenting such a defense. At the beginning of trial, defense counsel attempted to clarify the "Court's prior ruling that the defendants cannot present the defense that they thought they were on private property." ROA Vol. III at 27. In response, the court stated: "I didn't say they couldn't present the defense. I said they couldn't present it without some substantial evidence. They can't just come in and say, it looked like private property to us, without some basis in law." Id. Thus, the district court would have allowed the Quarrells to present a defense based on their belief that they were lawfully excavating on private land, which was a correct interpretation of the mistake of fact defense. However, the Quarrells presented no such evidence.[1] The only evidence they proffered to support their defense was that Sera stated the site was near an old homestead and they in fact saw the homestead near the East Fork site. This evidence does not support a theory that they reasonably believed they were *lawfully* on private land.

The court rejected the Quarrells' proposed jury instruction on the knowledge issue, which read in part: "If you find that any defendant was, at the time of such excavation,

---

[1]At one point during the examination of Michael, the judge sustained an objection to the question, "Did you have any information as to whether this was public land or not?" Defense counsel, referring to the information he was attempting to solicit, stated: "It's not offered as a defense." Defense counsel stated that the question was meant to clear up a "misimpression." The judge sustained the objection on relevancy grounds, stating: "If it's not a defense, why is it relevant?" ROA Vol. V at 504-06.

17

operating under a reasonable belief that he was not excavating an archeological resource, or that such resource was not located on public property, you must find such defendant not guilty." ROA Vol. I, Doc. 69 (proposed instr. 21). "A defendant is entitled to a theory of defense instruction when that instruction articulates a correct statement of the law and sufficient evidence has been presented to support the jury's finding in defendant's favor on that theory." United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir. 1999). The district court did not err in rejecting this instruction. First, the instruction was an incorrect statement of the law. Simply believing they were not on public property does not constitute a valid mistake of fact defense. Second, sufficient evidence was not presented to warrant a mistake of fact instruction because "no possible interpretation of the evidence presented at trial could support an acquittal under that theory." Id. The district court did not err in rejecting the jury instruction or in its interpretation of the mistake of fact defense.

*Restitution Order*

The district court ordered the Quarrells to pay restitution to the government pursuant to the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A. The Quarrells argue that the district court was not authorized to order restitution under the MVRA. The legality of a restitution order is reviewed *de novo.* United States v. Nichols, 169 F.3d 1255, 1278 (10th Cir. 1999). "Factual findings underlying a restitution order are

18

reviewed for clear error and the amount of restitution for an abuse of discretion." Id.

Federal courts do not possess the inherent authority to order restitution; therefore, they must be explicitly empowered to do so by statute. Id.

The Quarrells argue that the district court erred in ordering restitution under the MVRA because ARPA provides the exclusive method for recovering restitution. Section 470ff of ARPA provides for civil penalties and allows a federal land manager to recover, *inter alia,* "the cost of restoration and repair of the resource and the archaeological site involved." 16 U.S.C. § 470ff(a)(2)(B). Section 470ee(d), which describes the criminal penalties available, does not mention restitution. Because ARPA provides for restitution through civil penalties and does not explicitly authorize restitution through criminal penalties, the Quarrells argue a district court cannot utilize the MVRA to order restitution in a criminal case. They argue the exclusive method available to the government for recovering restitution is the civil penalties provision of ARPA.

The language of ARPA does not speak to this issue. However, Congress did address the issue in its discussion of the Act's criminal prohibitions and penalties:

> This section also provides criminal penalties for those who knowingly commit one of the prohibited acts . . . . *The committee is aware that these penalties overlap with more general statutes and regulations, and there is no intent to preclude action under those general provisions relating to the protection of federal property under appropriate circumstances.*

H.R. Rep. No. 96-311, at 1714 (1979) (emphasis added). Thus, the fact that Congress did not provide explicitly for restitution under the Act's criminal penalties does not preclude a

19

court from ordering restitution pursuant to the more general provisions of the MVRA. Nor does the availability of restitution through ARPA's civil penalties prevent a court from ordering restitution in a criminal case.

The district court ordered restitution pursuant to the MVRA, which was enacted as a supplement to the Victim Witness Protection Act (VWPA), 18 U.S.C. § 3663. The MVRA provides: "Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). Subsection (c) provides that "[t]his section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense (A) that is . . . (ii) an offense against property under this title . . . and (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." Id. § 3663A(c)(1).

Michael argues this case does not involve an "identifiable victim" and restitution is inappropriate under the MVRA. This argument is without merit because the government can be a "victim" under the MVRA. See Nichols, 169 F.3d at 1280. The Quarrells also argue the MVRA is inapplicable because a violation of ARPA, 16 U.S.C.§ 470ee, is not an offense "under this title," referring to Title 18. However, the Quarrells were also convicted of conspiracy under 18 U.S.C. § 371, which is an offense under Title 18. The Quarrells' conspiracy conviction satisfied the "under this title" requirement of the

20

MVRA. See United States v. Minneman, 143 F.3d 274, 284 (7th Cir. 1998) (holding restitution appropriate under the VWPA - which has the same "under this title" requirement - where the defendant was convicted for conspiracy, 18 U.S.C. § 371, and Title 26 tax offenses); United States v. Helmsley, 941 F.2d 71, 101 (2d Cir. 1991) (holding restitution appropriate where defendant was convicted of conspiracy and Title 26 offenses because conspiracy is a separate crime from the underlying predicate act, and nothing in the statute limits the court's power to order restitution for such an offense).

Alternatively, the Quarrells argue that restitution was discretionary because conspiracy is not "an offense against property." Under the VWPA, the court has discretion to order restitution "when sentencing a defendant convicted of an offense under this title . . . other than an offense described in section 3663A(c)." 18 U.S.C. § 3663(a)(1)(A). Because conspiracy is a Title 18 offense, the district court had discretion to order restitution under the VWPA unless the conspiracy was an "offense described in section 3663A(c)." Id. Section 3663A(c) includes "an offense against property." Thus, if the conspiracy conviction was an "offense against property," the district court properly ordered mandatory restitution under the MVRA. If the conspiracy conviction was not "an offense against property," then restitution was discretionary under the VWPA and the district court erred.

The parties have not cited us to any case that discusses whether a conspiracy can be an "offense against property" pursuant to the MVRA. The Quarrells argue that the

MVRA does not apply because an offense against property is not an element of conspiracy. To establish conspiracy, the government must prove: (1) there was an agreement to violate the law; (2) the defendants knew the essential objectives of the conspiracy; (3) the defendants knowingly and voluntarily participated in the conspiracy; and (4) interdependence existed among the coconspirators. United States v. Hanzlicek, 187 F.3d 1228, 1232 (10th Cir. 1999). It is true that not every conspiracy will involve an offense against property. Here, however, the Quarrells and Sera conspired to illegally excavate public land, they knew the objective of driving and hiking to the East Fork site was to excavate the land, and they knowingly and voluntarily excavated and damaged the land. The underlying predicate acts and purposes that constituted the conspiracy were an offense against property.

Further, the MVRA states that restitution is mandatory to "an offense against property under this title, . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). Fraud and deceit, like conspiracy, are not always offenses against property. Even though the statute does not explicitly refer to conspiracy, the MVRA applies to conspiracies when, as with fraud or deceit, their underlying purpose was an offense against property. The district court did not err when it ordered the Quarrells to pay restitution to the government pursuant to the MVRA.

*Restitution Amount*

Pursuant to the MVRA, the district court ordered the Quarrells each to pay $19,615 in restitution to the United States Forest Service.  This amount included $4,362 toward the emergency restoration and repair of the East Fork site, and $15,253 toward the total cost of archaeological damage to the site.  These amounts represent one-third of the damage in each of the two categories (accounting for Sera's involvement).

We review the amount of restitution ordered by the district court under an abuse of discretion standard.  United States v. Messner, 107 F.3d 1448, 1455 (10th Cir. 1997).  "An abuse of discretion occurs when, for example, the trial court fails to consider the applicable legal standard upon which its discretionary judgment is based."  Id.  A restitution order under the MVRA is "issued and enforced in accordance with section 3664."  18 U.S.C. § 3663A(d).  In determining the amount of restitution, the economic circumstances of the defendant are irrelevant.  18 U.S.C. § 3664(f)(1)(A).  Further,

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

Id. § 3664(h).  The government bears the burden of proving the amount of loss.  Id. § 3664(e).

The district court ordered the Quarrells to each pay $15,253 in archaeological damages.  The district court's calculation was based on extensive expert testimony and

23

damage reports submitted by both sides.  The district court stated:

> I'm also going to order the defendants to make restitution in the amount of $15,253 each.  I find that to be one-third of the archeological value of the damage done at the East Forks site.  I reach that conclusion by reviewing the testimony and relying primarily upon the testimony of defendants' archeologist, Dr. O'Leary.

ROA Vol. VII at 4.  The government argues the district court's award of damages for loss to archaeological value is supported by United States v. Shumway, 112 F.3d 1413 (10th Cir. 1997).  In Shumway, the defendant was convicted of, *inter alia,* violating ARPA, 16 U.S.C. § 470ee.  In calculating the loss to determine the defendant's offense level, the district court turned to U.S.S.G. § 2B1.1.  The commentary to section 2B1.1 provided that where the market value of the property at issue is "inadequate to measure harm to the victim, the court may measure loss in some other way."  Id. at 1424 (citing U.S.S.G. § 2B1.1, cmt. n.2 (1995)).  The court found that the fair market value of the artifacts inadequately reflected the level of harm inflicted by the defendant.  Therefore, the court measured loss "in some other way," and used the costs of restoration and repair and the loss to the archaeological value of the site to determine the defendant's offense level.  In determining archaeological value, the district court turned to the regulations governing ARPA.  The defendant appealed the sentence arguing the district court erred in including the loss to archaeological value in calculating his offense level.  We rejected the defendant's argument and approved the sentencing court's inclusion of damages to archaeological value in calculating the defendant's offense level in order to adequately

24

reflect the damage inflicted by the defendant.

Under ARPA, federal land managers may seek civil penalties against violators of the Act. 16 U.S.C. § 470ff(a)(1). "The amount of such penalty shall be determined under regulations . . . taking into account . . . (A) the archaeological or commercial value of the archaeological resource involved, and (B) the cost of restoration and repair of the resource and the archaeological site involved." Id. § 470ff(a)(2)(A)-(B). The regulation governing this section is 43 C.F.R. § 7.14, which is the regulation the district court turned to in Shumway. Section 7.14 defines "archaeological value" as

> the value of the information associated with the archaeological resource. This value shall be appraised in terms of the costs of the retrieval of the scientific information which would have been obtainable prior to the violation. These costs may include, but need not be limited to, the cost of preparing a research design, conducting field work, carrying out laboratory analysis, and preparing reports as would be necessary to realize the information potential.

43 C.F.R. § 7.14(a) (2002).

> Simply put, "archaeological value" is an effort to go back in time before the violation occurred and estimate what it would have cost the United States to engage in a full-blown archaeological dig at the site, notwithstanding the fact that the United States had no plans to engage in any such effort.

United States v. Hunter, 48 F. Supp. 2d 1283, 1288 (D. Utah 1998).

The government argues Shumway and 43 C.F.R. § 7.14 support the district court's award of damages to the archaeological value of the site. However, Shumway approved the district court's inclusion of damage to archaeological value in determining the

25

defendant's *offense level* under section 2B1.1,[2] not in determining the *amount* of

restitution under section 5E1.1. Indeed, although the district court in Shumway calculated

the loss at more than $120,000 in determining the defendant's offense level, the district

court only ordered $5,510.28 in restitution. 112 F.3d at 1417, 1424. Moreover, the

Guideline applied in Shumway (U.S.S.G. § 2B1.1 cmt. n.2) explicitly authorized the

district court to calculate loss "in some other way" in determining the defendant's offense

level. The Guideline governing the determination of the amount of the sentence,

however, does not grant the district court such discretion. See U.S.S.G. § 5E1.1.

Here, the district court, like the district court in Shumway, included archaeological

value in determining the Quarrells' offense level. However, *unlike the district court in*

*Shumway,* the district court here also included archaeological value in determining the

*amount* of restitution. We conclude this departure from Shumway was error.

A restitution order must be based on *actual* loss. Messner, 107 F.3d 1455.

Archaeological value requires the court to speculate on the cost of a hypothetical dig that

may never have occurred. Although this cost is recoverable under ARPA's civil penalties

provision, this was a criminal case and restitution was ordered under the MVRA. Under

the MVRA, the government is entitled to restitution based on its actual loss, not on the

cost of a hypothetical excavation. The district court abused its discretion in ordering the

---

[2]Sections 2B1.1 and 2B1.3 were at issue in Shumway. Section 2B1.3 has been consolidated into section 2B1.1.

26

Quarrells to each pay $15,253 in restitution for loss to archaeological value.

James argues the district court erred in calculating the amount of restoration and repair costs because it based that figure on the plea agreement of Sera. At the sentencing hearing, the court ordered the Quarrells each to pay $4,362 in restitution for the costs of restoring and repairing the site. The court cited United States v. Thompson, 39 F.3d 1103 (10th Cir. 1994), to support its decision to use Sera's plea agreement in fixing the amount of restitution. However, the court misinterpreted Thompson. In Thompson, the defendant entered into a plea agreement to pay full restitution to the victim. The district court subsequently ordered the defendant to pay full restitution pursuant to her plea agreement and the VWPA. The defendant appealed, arguing the district court erred by not considering her financial resources in ordering her to pay full restitution (the VWPA requires a court to consider a defendant's financial resources, the MVRA does not). Because the VWPA, 18 U.S.C. § 3663(a)(3), allows the court to order restitution "to the extent agreed to by the parties in a plea agreement," we affirmed the district court's ruling. Id. at 1105.

This case is distinguishable from Thompson. Thompson involved a restitution order under the VWPA. Here, restitution was ordered pursuant to the MVRA, which does not contain a section allowing the court to order restitution "to the extent agreed to by the parties in a plea agreement." Further, in Thompson, the court ordered the defendant to pay restitution pursuant to the defendant's own plea agreement, not a third

27

party's agreement.  Here, the Quarrells did not enter guilty pleas.  Finally, and more importantly, Thompson allowed the district court to look to the defendant's plea agreement to determine the defendant's financial resources in fashioning the restitution order.  The holding does not stand for the proposition that a court can look to a plea agreement, let alone a third party's plea agreement, *in calculating the amount of the victim's loss.*  It is the government's burden to demonstrate the amount of the victim's loss and any disputes concerning the amount of loss are to be resolved by the court by a preponderance of the evidence.  18 U.S.C. § 3664(e).

The district court's misinterpretation of Thompson was harmless.  The court ordered the Quarrells each to pay $4,362 (1/3 of $13,086).  Section 3664(a) requires that the presentence report include an accounting of the losses to each victim.  Here, the report included a detailed accounting of the cost of restoration and repair.  The report calculated the total costs at $13,086.96, which was the amount adopted by the district court at sentencing.[3]

James also argues that the restoration and repair award is incorrect because it includes $300 for the investigation services of Officer Van Camp.  Although the 1.5 days of field work performed by Officer Van Camp are not described in detail, the officer testified that she assisted the archeologist in surveying the East Fork site as part of the

---

[3]Although the presentence report calculated the total cost at $11,742.96, this amount was the result of a mathematical error and the government submitted a "corrected copy" of the estimate with its brief.

28

restoration process. Based on the report of the archeologist and Officer Van Camp's testimony, the district court did not abuse its discretion in including Officer Van Camp's fieldwork as part of the calculation. The district court's order of restitution in the amount of $4,362 was correct. However, the court's restitution order of $15,253 for the loss to the archaeological value of the site was not authorized by statute and was an abuse of discretion.

*Obstruction of Justice*

The district court found that the Quarrells perjured themselves at trial and enhanced their sentences for obstruction of justice under U.S.S.G. § 3C1.1. In finding an obstruction of justice, the district court stated:

> [I]'m going to find obstruction of justice. I think, based on the preponderance of the evidence, it's likely they did not tell the truth about their prior activities at Diamond Creek or at the East Fork. I think it's too big a coincidence their chevron-shaped footprints are at those prior locations, or they may have been those of the co-defendant Mr. Sera. There was also the sausage can and the brown gloves. And there may be thousands of both in the market, but it would be odd that these very same lot numbers of Vienna Sausage would end up in the Gila Wilderness. I think it's clear that it's such an unusual coincidence [a]s to find obstruction of justice.

ROA Vol. VIII, at 236. James argues this finding was in error.

A finding of perjury in support of an obstruction of justice enhancement must contain two components. United States v. Smith, 81 F.3d 915, 918 (10th Cir. 1996). First, the finding must encompass all of the factual predicates of perjury. Id. Second, the

finding must specifically identify the perjured testimony. Id. In United States v. Dunnigan, 507 U.S. 87, 95 (1993), the Court stated that

> it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.

The elements of perjury are that a witness: (1) gives false testimony; (2) concerning a material matter; and (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. Smith, 81 F.3d at 918. The district court's findings addressed the first element, but failed to address the necessary findings of materiality and willfulness, even in the generalized manner permitted by Dunnigan. See United States v. Medina-Estrada, 81 F.3d 981, 987 (10th Cir. 1996) ("[T]he district court's findings adequately identify [the defendant's] perjurious trial testimony. However, the findings fail to set forth all of the requisite factual predicates of perjury.").

The district court is not required to recite the perjured testimony verbatim. United States v. Massey, 48 F.3d 1560, 1574 (10th Cir. 1995). It is sufficient that the court generally identify the testimony at issue. Id. Here, the district court satisfied this requirement by describing the substance of the perjured testimony. However, because the court failed to make any findings as to the materiality and willfulness elements of perjury, we remand to afford the district court the opportunity to make findings consistent with Dunnigan.

*Acceptance of Responsibility*

Michael contends the district court erred in not granting him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. He argues that he is entitled to the adjustment because he stipulated to all of the essential elements of the charges and went to trial only to contest the amount of damages and whether the statute required him to know he was on public land.

The district court's acceptance of responsibility determination is subject to the clearly erroneous standard of review. United States v. Mitchell, 113 F.3d 1528, 1533 (10th Cir. 1997). Because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," his or her decision is "entitled to great deference on review." U.S.S.G. § 3E1.1, cmt. n.5 (2001). The burden of proving acceptance of responsibility is on the defendant, who must establish by a preponderance of the evidence a "recognition and affirmative acceptance of personal responsibility for his criminal conduct." Mitchell, 113 F.3d at 1534. In "rare situations" a defendant may receive credit for acceptance of responsibility even though he exercised his right to a trial. U.S.S.G. § 3E1.1, cmt. n.2. An example of such a situation is where a defendant goes to trial "to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct." Id.

Among the considerations used in determining whether a defendant should receive the acceptance of responsibility adjustment are whether the defendant admitted to the

31

elements of the crimes and whether the defendant admitted to, or at least did not falsely deny, any other relevant conduct. § 3E1.1, cmt. n.1(a). Although Michael admitted to excavating for archaeological resources, he contested the government's estimate of damages. He did not admit to digging the holes at the site, and testified that he caused little, if any, damage to the site or to the artifacts. See, e.g., ROA Vol. V at 501 ("Q. Mr. Quarrell, can you tell me whether you had broken into anything undisturbed during the time you were in that hole? A. No, sir, I did not. Everything that I moved at the time had already been previously moved.").

Under ARPA, the maximum sentence is increased if a defendant causes more than $500 in damages. 16 U.S.C. § 470ee(d). Because the amount of damages can increase the statutory maximum penalty, it is an element of the crime that must be submitted to a jury and proven beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Because Michael did not stipulate that he caused in excess of $500 in damages, the government had to prove an essential fact at trial. Accordingly, the district court did not err in denying Michael a reduction in his offense level for acceptance of responsibility.

The district court also found that Michael obstructed justice by testifying falsely at trial. Michael does not appeal this finding. "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.1(a).

32

The district court properly denied Michael an acceptance of responsibility adjustment because not only did he contest an essential fact at trial, but he also falsely denied relevant conduct at trial. The court's determination was not clearly erroneous.

III.

The Quarrells' convictions are AFFIRMED, but we REMAND to the district court for resentencing in accordance with this opinion.