**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 4 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

TERRY LYNN BARTON,

      Defendant-Appellee.

No. 03-1112

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 02-CR-255-M)**

John W. Suthers, United States Attorney, (Robert M. Russel, Assistant United States Attorney, with him on the briefs), Denver, Colorado, for the plaintiff-appellant.

Warren R. Williamson, Assistant Federal Public Defender, (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colorado, for the defendant-appellee.

Before **TACHA**, Chief Circuit Judge, **BRISCOE**, Circuit Judge, and **LUNGSTRUM**, Chief District Judge.[*]

**BRISCOE**, Circuit Judge.

---

    [*] The Honorable John W. Lungstrum, Chief District Judge, United States District Court, District of Kansas, sitting by designation.

Defendant Terry Lynn Barton pled guilty to setting fire to inflammable materials on federal lands, in violation of 18 U.S.C. § 1855, and making a false statement within the jurisdiction of the United States, in violation of 18 U.S.C. § 1001. The presentence investigation report (PSR), citing the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, recommended that Barton be ordered to reimburse the United States Forest Service for monies expended in revegetating fire-damaged forest land. Although Barton did not object to the recommendation, the district court refused to order restitution, citing the alleged complexity of determining the Forest Service's loss, as well as the effect an order of restitution would have on Barton given her limited financial resources.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we agree with the government that the district court erred in not imposing restitution. Because the amount of restitution recommended in the PSR was based on actual recoverable loss incurred by a victim of Barton's crime, and because Barton did not object to the recommendation, the "complexity" exception of the MVRA was not triggered. Further, we agree with the government that Barton's financial circumstances were irrelevant under the MVRA. We therefore reverse and remand with directions to the district court to impose restitution in the amount proposed by the government.

I.

In the spring of 2002, Barton was employed by the Forest Service and assigned to

the Pike National Forest in Colorado. Her duties primarily focused on the making and maintaining of trails for all-terrain vehicles. As of early June 2002, however, she was also responsible for patrolling dispersed campsites in the Forest to enforce a campfire ban that had been issued by the Forest Service due to unseasonably dry conditions. While Barton was working in the Forest on the afternoon of June 8, 2002, she radioed for help in suppressing a wildland fire. Although additional personnel responded to Barton's call, the fire spread rapidly due to high temperatures, low relative humidity, and high winds. Over a period of 17 days, the fire, which became known as the Hayman Fire, engulfed and damaged approximately 138,000 acres of land, the majority of which was located within the Forest and owned by the United States.

Government officials conducted an investigation to determine the origin of the fire and Barton was interviewed on three separate occasions. During her final interview on June 15, 2002, Barton admitted she started the fire. She indicated that, while on duty in the Forest on June 8, 2002, she used a campfire ring to burn a letter from her estranged husband and left without ensuring that the fire was extinguished. When she returned to the scene, the fire had grown out of control and she radioed for help.

Barton was indicted on four federal criminal charges and, as part of an agreement with the government, pled guilty to setting fire to inflammable materials on federal lands

3

and making a false statement within the jurisdiction of the United States.[1]  The plea agreement acknowledged that "restitution [was] to be determined by the Court."  App. at 27.  Notwithstanding that provision, the plea agreement noted the parties had stipulated that "the damage to timber on federal lands and other materials and to the watershed [wa]s approximately $38 million dollars."  Id. at 31.

Following the entry of Barton's guilty plea, the government addressed a letter to the probation office outlining its views on the damages sustained by the government as a result of the fire.  Although the letter briefly discussed how the parties arrived at the $38 million dollar loss figure contained in the plea agreement, it stated the government was "not seeking a restitution order . . . reflecting the loss to actual forest lands damaged by the fire nor suppression costs."  Id. at 155.  Instead, the letter expressed the government's belief "that a restitution order to the United States Forest Service in the amount of $14,671,510.00 [wa]s not only appropriate but mandated by law."  Id.  The letter stated that "[t]his amount ha[d] been expended by the government to implement emergency revegetation in the Hayman Fire area" and "was compelled by the imminent threat to the deforested burn area posed by erosion."  Id.

The amount of stipulated damages was noted in the PSR in a section entitled

---

[1] According to the information, the false statement charge arose out of Barton's statements to "U.S. Forest Service personnel that she had smelled smoke and then came upon and discovered an abandoned and unextinguished campfire kindled by a person unknown; when in truth and in fact, the defendant had not smelled smoke and knew she had caused the fire herself."  App. at 23.

"Victim Impact," but the PSR further noted the government was only "seeking restitution in the amount of $14,671,510," representing "the expenditures to date by the United States government to implement emergency revegetation in the Hayman fire area." Id. at 111. Noting the mandatory restitution provisions of the MVRA, the PSR recommended "that [Barton] be ordered to make restitution" to the "USDA Forest Service" in the amount of $14,671,510. Id. at 129. The PSR also "recommended that the Court find that [Barton] does not have the ability to pay interest and that the Court waive the interest requirement for the restitution." Id. There is no indication in the record that Barton objected to the restitution recommendation in the PSR.

In addressing the issue of restitution under the MVRA at sentencing, the district court noted there had been "no agreement about restitution," but that "it was agreed . . . the loss [wa]s something over $20 million and less than $50 million." Id. at 75. The court concluded the key question in applying the MVRA was "what was the value of the Pike National Forest and what is the value of it now?" Id. at 76. The court outlined its preliminary views and conclusions on the issue:

> Now, I'm going to, of course, permit counsel to address this. But, I want to put it into some focus here so that . . . whoever is going to address this [on behalf of the parties], will know the concern that I have. The statute does not say that ability to pay is a factor that can be considered in determining the amount of restitution required. It can be considered in setting terms of payment in installments. And, indeed, the statute says that the court, where there is an inability to pay, may set nominal payments on the amount of the restitution.
> But, you know, it isn't that easy. This is a debt, once the Court imposes it in a judgment in a criminal case, which is different from a civil

5

case, it can be a condition and the installment payments generally are a condition of supervised release, which is the period that follows serving the term of confinement. But it doesn't end there. It can be in effect for 20 years, and in fact can be renewed, revived.

So, if I sentence Terry Barton to pay $14 – almost $15 million, I'm sentencing her to a life in which she will be yoked to a burden of debt that makes her situation pretty hopeless. Anybody convicted of a felony has trouble finding a job when they finish their prison term. And when you have a debt like this, that means that collection activities can be conducted, even after the person has served the term of supervised release and is otherwise free. That is a debt that's not dischargeable in bankruptcy. You live with it.

And, you know, there is still I think in the criminal law, despite all of the formulas that we have and sentencing guidelines, and these things, there's still a place for moral judgment. That's why sentences are still imposed by judges instead of computers. And there is in this case a great concern of mine in exercising moral judgment as to whether this woman should be sentenced to a lifetime of poverty, because that's what this restitution order would mean.

There is a provision in the law in this same statute [the MVRA] that provides that determining the complex – if there is a requirement that determining restitution requires determining complex issues of fact related to the cause or amount of the victim's losses that would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process, no restitution order is required.

So, as I come to this issue in this case, I reflect on how does one value a forest. How do you value this natural resource? Do you talk about it as how many timber sales, how much timber could be harvested there, and what the government could recover as a result of that? Do you value it for its recreational use, what it means to people who make recreational use of the forest? Do we assign an aesthetic value to it? Do we give it a value because of its environmental – it being an environmental asset important to sustaining life?

You know, it's pretty unreasonable, it seems to me, to say in applying this language, the value of the property, that you can ascribe any value to this property as opposed to saying it's priceless. So, that's where I'm coming from, as they say in some circles, and I'd be pleased to hear from counsel on this, of course, you have that right. But, in my view, and I'm just saying this preliminarily so that you can put this in focus, your

remarks, that I think this case uniquely comes within this provision that permits the Court not to order restitution.

Id. at 77-79. After hearing argument from government counsel and remarking that the government had "done [its] homework in presenting what seem[ed] like a reasonable approach" to restitution, id. at 80, the district court announced its ruling on the MVRA issue:

> [M]y view of the law is different from [that] . . . of the government. I believe that this case, if we were actually to apply the language of the statute, that is to say the value of the property on the date of the damage, loss or destruction, does create such complex issues of facts that determining that with some accuracy would require lengthy proceedings.
>    And I am also not going to sentence Ms. Barton, as I've already said, to a life of poverty. It might be more humane to sentence her to life imprisonment. At least she'd get square meals and a place to sleep. And I'm not going to do that, and I believe that this position is justified by the language of this statute, and I don't believe that in adopting this language, the Congress of the United States respectfully had in mind restitution of almost $15 million of a person who was employed by the Forest Service making about $25,000, and who will have a great deal of trouble finding another job when she gets out of prison. So, I'm not going to impose an order of restitution, based on my determination that this comes within the language of the statute.

Id. at 84-85.

## II.

On appeal, the government contends the district court erred in not ordering restitution under the MVRA. We review de novo a district court's interpretation of the MVRA. See United States v. Quarrell, 310 F.3d 664, 676 (10th Cir. 2002). "Factual findings underlying a restitution order are reviewed for clear error and the amount of

7

restitution for an abuse of discretion." Id. (internal quotations omitted). "An abuse of discretion occurs when, for example, the trial court fails to consider the applicable legal standard upon which its discretionary judgment is based." Id. at 678 (internal quotations omitted).

*MVRA - applicability and procedures*

Although federal courts lack inherent authority to order restitution, Congress has "provided statutory authorization for court-ordered restitution in certain circumstances." United States v. Randle, 324 F.3d 550, 555 (7th Cir. 2003). In particular, the MVRA, which was passed in 1996 as a supplement to the Victim and Witness Protection Act, 18 U.S.C. § 3663, requires imposition of restitution for certain categories of offenses, including "offense[s] against property." See 18 U.S.C. §§ 3663A(a)(1) ("when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense"), and (c)(1)(A)(ii) ("This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense . . . that is . . . an offense against property under this title."). In a case such as this involving "damage to or loss or destruction of property of a victim of the offense," and circumstances in which mere return of the property to the owner (or owners) is "inadequate," 18 U.S.C. § 3663A(b)(1)(B), the defendant shall "pay an amount equal to" "the greater of – (I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of

8

the property on the date of sentencing, less . . . the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663(b)(1)(B)(i) and (ii). The only reasons for not requiring restitution are if "the number of identifiable victims is so large as to make restitution impracticable," or if "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. §§ 3663A(c)(3)(A), (B).

When a case falls within the scope of the MVRA, the sentencing court is required to "order the probation officer to obtain and include in" the PSR "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). The PSR "shall include, to the extent practicable, a complete accounting of the losses to each victim." Id. "After reviewing the [PSR], the [sentencing] court may require additional documentation or hear testimony." 18 U.S.C. § 3664(d)(4). "Any dispute as to the proper amount . . . of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e). "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." Id. "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C.

9

§ 3664(f)(1)(A).

> A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

18 U.S.C. § 3664(f)(3)(B).

*Application of MVRA*

It is uncontroverted that the MVRA applies to this case. More specifically, it is uncontroverted that (1) Barton pled guilty to an "offense against property," i.e., setting fire to inflammable materials on federal property, (2) the government was a "victim" of that offense for purposes of the MVRA, see Quarrell, 310 F.3d at 677 (concluding "the government can be a 'victim' under the MVRA"), and (3) the government sustained substantial losses directly related to the fire set by Barton. Thus, barring applicability of one of the two narrow exceptions outlined in § 3663A(c)(3), the district court was required by the MVRA to impose restitution on Barton.

With these principles in mind, we turn to the reasons offered by the district court for not imposing restitution on Barton. It is apparent from reviewing the sentencing hearing transcript that the district court intended to invoke the narrow statutory exception set forth in § 3663A(c)(3)(B). As noted, the court stated on the record:

> I reflect on how does one value a forest. How do you value this natural resource? Do you talk about it as how many timber sales, how much timber could be harvested there, and what the government could recover as a result

10

of that? Do you value it for its recreational use, what it means to people who make recreational use of the forest? Do we assign an aesthetic value to it? Do we give it a value because of its environmental – it being an environmental asset important to sustaining life?

Id. Ultimately, the district court concluded that determining "the value of the property on the date of the damage, loss or destruction, does create such complex issues of fact that determining that with some accuracy would require lengthy proceedings." Id. at 84-85.

We reject the district court's invocation of the § 3663A(c)(3)(b) "complexity" exception. Where, as here, the PSR recommends restitution under the MVRA for an actual recoverable loss incurred by a victim of the defendant's crime, and the defendant does not object to that request, there is no need under the MVRA for a district court to engage in any additional fact finding with respect "to the proper amount or type of restitution," 18 U.S.C. § 3664(e), and thus no basis for a district court to invoke the § 3663A(c)(3)(b) exception.

It is also apparent from reviewing the transcript of the sentencing hearing that the district court considered Barton's financial situation and was deeply concerned about the effect a restitution order would have on her, opining at one point during sentencing that a restitution order effectively would sentence her to a "life of poverty." App. at 85. Those considerations, however, are irrelevant under the MVRA. Neither statutory exception set forth in § 3663A(c)(3) takes into account a defendant's financial circumstances. More importantly, § 3664, which outlines the procedures for imposing restitution under the MVRA, expressly states that "the court shall order restitution . . . without consideration of

11

the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added).[2] The district court itself acknowledged this limitation on the exercise of its discretion in its initial comments at the sentencing hearing.

In sum, we conclude the district court erred in invoking the statutory exception to restitution set forth in § 3663A(c)(3)(B) and in considering Barton's financial circumstances. We reverse the judgment of the district court and remand to the district court for resentencing.

*Government's proposed loss calculation*

For purposes of judicial efficiency, it is appropriate to review the government's proposed loss calculation. As noted, the government addressed a letter to the probation office prior to sentencing indicating that, although the stipulated value of the damage to the forest was $38 million, it would seek only $14.7 million in restitution. The government asserted that amount was derived from the monies spent by the Forest Service following extinguishment of the fire in revegetating the forest to prevent erosion in the aftermath of the fire. The government asserted to the district court and asserts on appeal that this amount is a reasonable and easily ascertained proxy for the "loss" sustained by the Forest Service as a result of Barton's crimes.

We conclude the government's approach is acceptable under the case law

---

[2] We note that the district court may, on remand, take into account Barton's financial circumstances in determining a payment schedule (including whether to have her "make nominal periodic payments"). See 18 U.S.C. § 3664(f)(3)(B).

interpreting the MVRA. Although there is general agreement that a restitution order under the MVRA cannot encompass consequential damages resulting from the defendant's conduct, e.g., United States v. Seward, 272 F.3d 831, 839 (7th Cir. 2001) ("In calculating . . . the actual loss amount for restitution [under the MVRA], the district court should include in the calculation all direct damages, but not include consequential or incidental damages."); United States v. Mikolajczyk, 137 F.3d 237, 245-46 (5th Cir. 1998) (noting consequential damages, such as legal expenses incurred in connection with a civil suit to recover damage to property, are not recoverable under the MVRA); see also United States v. Patty, 992 F.2d 1045, 1049 (10th Cir. 1993) (holding expenses incurred in liquidating defendant's company were not recoverable in restitution under the VWPA), this court and other courts previously have held, in cases involving damage to property, that a restitution order under the MVRA can include the costs of cleanup or repair of the damaged property. See United States v. Quillen, 335 F.3d 219, 226 (3d Cir. 2003) (holding "clean-up or repair costs may be ordered under the MVRA, provided the defendant is not required to compensate the victim twice for the same loss"); Quarrell, 310 F.3d at 678-81 (affirming restitution in an amount equal to costs of restoring and repairing archaeological site in national forest); United States v. Overholt, 307 F.3d 1231, 1254 (10th Cir. 2002) (affirming, under plain error standard of review, a restitution order under the MVRA that required defendants to pay the Coast Guard's cost of cleaning up defendants' pollution of navigable waters); see also United States v. Sharp, 927 F.2d 170,

174 (4th Cir. 1991) (affirming, in case arising under similar provision of the VWPA, restitution order that included the costs of repairing the property damaged by defendants). The government's proposed loss calculation is consistent with these principles since revegetation can be viewed as an effort to "repair" the forest and would not have occurred absent the fire.

The judgment of the district court is REVERSED and the case is REMANDED to the district court with directions to impose restitution in the amount proposed by the government.

*03-1112, United States v. Barton*

**TACHA**, *Chief Circuit Judge, concurring*

I concur fully in the Court's opinion. I write separately only to emphasize that I read today's opinion to address exclusively those instances in which the parties have stipulated to "loss" and the defendant did not object to that amount before the district court. Maj. Op. at 2 & 11.

I do not understand today's opinion to address whether, in the absence of such an uncontested agreement, a party may recover "repair" costs under the MVRA and, if so, how such costs fit into the statutorily mandated methodology for measuring loss found in 18 U.S.C. § 3663A(b)(2)(B). *Compare United States v. Mitchell*, 876 F.2d 1178, 1184 (5th Cir. 1989) (addressing identical language under the VWPA; holding that the plain language of the VWPA has no "provision authorizing restitution for lost income, cost of restoring property to its pre-theft condition, or cost of employing counsel to recover from an insurance company") *with United States v. Quillen*, 335 F.3d 219, 223-24 (3d Cir. 2003) (holding that a party can recover repair costs under the MVRA). Although I am dubious that the MVRA permits such recovery, I read today's opinion to leave that question for another day.

Likewise, I do not read today's opinion to intimate that our Circuit has already passed on this issue. Although I note that the Court cites *United States v. Overholt*, 307 F.3d 1231, 1254 (10th Cir. 2002), as approving cleanup or repair costs under the MVRA,

as the Court notes, *Overholt* never squarely addressed that issue. Maj. Op. at 13 (noting that *Overholt* occurred under plain error standard). Instead, operating under a plain error standard of review, *Overholt* merely held that the issue was "not clear or obvious under current law." *Overholt*, 307 F.3d at 1254. In fact, although expressing some doubt, the *Overholt* court specifically left open whether repair costs are properly recoverable under the plain text of the MVRA. *Id.* ("Perhaps the [MVRA] could be read to say that when there is physical damage to property, the only permissible restitution is payment to the property owner of the amount calculated in accordance with that language . . . .").

Because I read today's opinion to accord fully with these observations, I join without reservation.