FILED
United States Court of Appeals
Tenth Circuit

December 7, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES GALLOWAY,

      Defendant - Appellant.

No. 06-1487

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 04-CR-465-WDM)**

---

James C. Murphy, Assistant United States Attorney (and Troy A. Eid, United States Attorney, on the brief), Denver, Colorado, for Plaintiff - Appellee.

Robert S. Berger, Denver, Colorado, for Defendant - Appellant.

---

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Defendant-Appellant James Galloway appeals from his sentence in connection with a scheme to obtain mortgages and mortgage insurance for unqualified home buyers. Specifically, Mr. Galloway was convicted by a jury of conspiracy to defraud the United States, 18 U.S.C. § 371 (count 1); wire fraud and

aiding and abetting, 18 U.S.C. §§ 1343 & 2 (counts 2 through 7); false representation of a Social Security Number and aiding and abetting, 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2 (counts 8, 9, 12, 14, and 16); and false statements to the executive branch of the United States government and aiding and abetting, 18 U.S.C. §§ 1001 & 2 (counts 10, 11, 13, and 15). The district court sentenced Mr. Galloway to 12 months and 1 day in prison and 3 years' supervised release on each count of conviction, to be served concurrently. The district court also imposed restitution in the amount of $29,359.20.

On appeal, Mr. Galloway claims that the district court (1) clearly erred in finding an undetermined loss and using gain as a measure of loss in calculating his sentence, and (2) imposed an illegal restitution order when it required him to pay his commissions to the victim. He takes issue with application of a four-level enhancement and imposing restitution on the basis of the amount of commissions he received from his fraudulent activity. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we remand this case to the district court so it may vacate the sentence and the restitution order, and re-sentence Mr. Galloway including restitution if indicated.

## Background

Between February 1999 and September 2000, Mr. Galloway, a licensed real estate broker, participated in a conspiracy to defraud the United States by obtaining mortgages and mortgage insurance for unqualified home buyers. He referred potential home buyers to Warren Williams, who prepared false social security numbers, false pay stubs and W-2 forms, false credit reports, and other false information for inclusion in mortgage loan applications. These applications were submitted to mortgage companies and later sent to the Federal Housing Authority ("FHA"), an agency of the United States Department of Housing and Urban Development ("HUD"). Mr. Galloway would attend closings on these transactions and receive real estate commissions. Mr. Galloway would then pay Williams a kickback.

Following Mr. Galloway's conviction, the probation officer prepared an initial presentence investigation report ("PSR"). The PSR, relying largely on the government's initial sentencing statement, concluded that Mr. Galloway's fraudulent conduct caused a loss to HUD in the amount of $47,696.09. This calculation was based upon mortgage defaults of $8,440.53 and $39,235.56[1] by co-defendants Tanya Pickett and Kendrick Brame, respectively. However, the PSR also recommended increasing the loss by the amount of Mr. Galloway's

---

[1] We recognize that the sum of these two amounts is $47,676.09.

commissions, which totaled, $29,359.20, resulting in a total loss of $77,055.29. The PSR also recommended a restitution order of $47,696.09.

Mr. Galloway objected to the PSR. He argued that his commissions should not be included in the calculation of HUD's loss. He also argued that the government should be estopped from claiming a loss on the Pickett default because the government failed to claim such a loss at Ms. Pickett's sentencing. Therefore, Mr. Galloway argued the actual loss was $39,235.56, based upon the Brame default, and that the loss calculation and restitution order should be limited to that amount. In an addendum to the PSR, the probation officer stood by his recommendation. The district court held a sentencing hearing but continued the hearing because it concluded further information was needed to resolve this dispute.

However, by the time the district court held its next sentencing hearing, the dispute over the amount of loss Mr. Galloway caused became further complicated by the fact that the parties had changed their positions. Both the government and the probation officer increased their loss calculations due to the discovery of an additional loss of $46,307.00, which was associated with the home purchased by Lanay Collins, another co-defendant. In addition, the government offered a new formula on how to calculate the total loss. The government argued that the total loss should include the actual loss to HUD plus Mr. Galloway's commissions on transactions for which there was no loss. According to this formula, the

4

government amended its loss calculation to $102,859.09.[2]  At the same time, the probation officer continued to include all of Mr. Galloway's commissions in the total loss calculation and thus concluded the total loss equaled $122,992.29.[3]

In response, Mr. Galloway argued HUD suffered no loss on any of the transactions in which he participated.  Withdrawing his earlier concession regarding Brame's default, he claimed he was not responsible for the loss associated with Collins' or Brame's default because each occurred on refinanced loans, not loans Mr. Galloway helped them fraudulently obtain.  He also amended his argument concerning the Pickett default, explaining that evidence revealed her home was sold in a foreclosure action for more than the balance owed.  Accordingly, he argued his sentence should not be enhanced on the basis of HUD's loss because he caused none, and likewise, he should not be ordered to pay restitution.

To address Mr. Galloway's arguments, the government called as a witness, Marc Friedland, a program management analyst for HUD.  Mr. Friedland testified that the actual loss to HUD on the Brame default was $39,300.55, not $39,235.56,

---

[2]  In performing this calculation, the government transposed two numbers. According to the government's data, the government should have calculated the total loss to HUD as $65,552.09 instead of $56,552.09.  Thus, the total loss under the government's formula should have equaled $111,859.09.  Although a witness for the government noted this error was corrected, the corrected calculation is not included in the record before us.

[3]  In arriving at this figure, the probation officer revised the Pickett loss to $8,090.53.

and confirmed that the losses associated with the Pickett and Collins defaults were $8,090.53 and $46,307.00, respectively. Freidland further testified that, under the FHA-HUD streamline process, HUD evaluated Brame's and Collins' refinance applications using information that appeared on their primary mortgage applications, and they could not have received their refinanced loans without first obtaining their FHA-insured primary mortgages. Accordingly, the government argued that Mr. Galloway should be held responsible for the Brame and Collins losses, even if they occurred on loans they subsequently obtained without his involvement.

The district court concluded that Mr. Galloway's fraudulent conduct caused a loss to HUD, but further concluded it could not reasonably quantify the precise amount of loss given the conflicting data submitted by the government. Therefore, the district court chose to estimate the loss using Mr. Galloway's total gain (commissions) of $29,359.20, an undisputed amount. Applying section 2B1.1 of the 2005 United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the district court calculated a total offense level of 13, which included a base offense level of 7 pursuant to § 2B1.1(a)(1), a 4-level enhancement pursuant to § 2B1.1(b)(1)(C), for a loss of more than $10,000 but less than $30,000, and a 2-level enhancement pursuant to § 3B1.3,[4] for use of a

---

[4] The district court mistakenly cited § 3C1.1 for imposing the offense level enhancement for special skill.

6

special skill.[5]  The district court departed downward to a criminal history category

of I, resulting in a Guideline sentencing range of 12-18 months, and imposed a

sentence of 12 months and 1 day and 3 years' supervised release.  The district

court imposed restitution in the amount of Mr. Galloway's total gain, $29,359.20.

On appeal, Mr. Galloway does not challenge the district court's 2-level

enhancement for use of a special skill, he only challenges the 4-level

enhancement and restitution order that resulted from the district court's use of his

commissions as the estimate of HUD's loss.


### Discussion

A.  Loss Calculation and Sentence

In reviewing Mr. Galloway's sentence, we first examine whether the

district court correctly determined the advisory guideline sentence range, and if

---

[5]  The district court initially applied the 1998 version of the Guidelines in determining Mr. Galloway's sentence, but after the probation officer advised the district court that the 2005 version should be applied to avoid ex post facto concerns, the district court amended its findings and conclusions.  Under the 1998 version of the Guidelines, the total offense level would have been 14; the base offense level would have been 6, a 4-level enhancement would have been imposed for a loss greater than $20,000 but less than $40,000, a 2-level enhancement would have been imposed for more than minimal planning, and a 2-level enhancement would have been imposed for use of a special skill.  With a criminal history category of I, the Guideline sentencing range would have been 15-21 months.  Mr. Galloway did not object to the more than minimal planning enhancement during his sentencing hearing.  See VIII Aplt. App. at 103.  The minimal planning enhancement does not apply under the 2005 version of the Guidelines.

7

so, we review the sentence for reasonableness. See United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006). We review the district court's legal conclusions de novo and its factual findings for clear error. See id. at 1054. The district court's factual findings constitute clear error when our review of the entire record leaves us with the "definite and firm conviction that a mistake has been made." United States v. Burridge, 191 F.3d 1297, 1301 (10th Cir. 1999) (internal quotation marks omitted). We apply a rebuttable presumption of reasonableness for sentences imposed within the correctly calculated advisory guideline range. See Rita v. United States, 127 S. Ct. 2456, 2462-63 (2007); Kristl, 437 F.3d at 1055. If we conclude that the district court misapplied the guidelines, we must remand the case to the district court for re-sentencing unless we determine, based upon our review of the entire record, that the district court's error was harmless. See 18 U.S.C. § 3742(f)(1); Williams v. United States, 503 U.S. 193, 203 (1992).

At the outset, we note that the amount of loss, if any, that resulted from Mr. Galloway's fraudulent conduct affects whether the 1998 or 2005 version of the Guidelines applies to this case. The district court initially applied the 1998 version but amended its findings and conclusions using the 2005 version after the parole officer raised ex post facto concerns.[6] In light of this issue, we review the

---

[6] In 2001, Amendment 617 consolidated U.S.S.G. § 2F1.1 into § 2B1.1. Relevant to this case, Amendment 617 increased the base offense level, changed

(continued...)

8

district court's sentence determination under both the 1998 and 2005 versions of the Guidelines.

Under either the 1998 or 2005 Guidelines, the district court may increase the offense level for a defendant convicted of fraud based upon the actual financial loss caused by the defendant's fraudulent conduct or by the loss intended by the defendant, whichever is greater. See U.S.S.G. § 2B1.1(b)(1), cmt. n.3(A) (2005); U.S.S.G. § 2F1.1(b)(1), cmt. n.8(b) (1998). Because Mr. Galloway was convicted of aiding and abetting the fraud of the borrowers, Mr. Galloway is sentenced as a principal and we "treat him as the recipient of the fraudulently obtained loan proceeds." See United States v. Smith, 951 F.2d 1164, 1167 n.4 (10th Cir. 1991). The district court need not calculate actual or intended loss with exact precision, it need only make reasonable estimates. See U.S.S.G. § 2B1.1(b)(1), cmt. n.3(C) (2005); U.S.S.G. § 2F1.1(b)(1), cmt. n.9 (1998). The government has the burden of proving actual and intended loss by a

---

[6](...continued)
the definition of loss, removed the more than minimal planning offense enhancement, and modified the offense enhancements that correspond to certain levels of loss. As Mr. Galloway's offense was committed between 1999 and 2000 and his sentence was imposed in 2006, these changes create the potential for an ex post facto problem, see U.S. Const., art. I., § 9, cl. 3, which can only be resolved once the loss, if any, is determined under both sets of guidelines. See U.S.S.G. § 1B1.11(a); United States v. Owens, 70 F.3d 1118, 1130 (10th Cir. 2006) (We compare the effect that application of the version of the guidelines in effect at the time of sentencing and that in effect at the time of the offense would have on the defendant's sentence and apply the latter if the former would place the defendant at a disadvantage.).

9

preponderance of the evidence.  United States v. Schild, 269 F.3d 1198, 1200

(10th Cir. 2001).  If there is an actual or intended loss, the gain that resulted from

the offense may serve as an alternate measure of loss if the actual or intended loss

cannot be reasonably determined.  See U.S.S.G. § 2B1.1(b)(1), cmt. n.3(B)

(2005); U.S.S.G. § 2F1.1(b)(1), cmt. n.9 (1998).

Faced with ever-changing and conflicting data on the loss sustained by

HUD as well as arguments by Mr. Galloway that HUD sustained no loss, the

district court concluded without explanation that a loss occurred, and then

determined it could not reasonably quantify the actual or intended loss.  Instead,

it chose to estimate the loss using Mr. Galloway's gain, the only figure not in

dispute.  The district court stated:

> My own personal conclusions are that the defendant's conduct did
> cause a loss. . . .  I do determine that there has been a loss from the
> Government's exhibits for the conduct as a whole. . . .  I do,
> however, find and conclude that the correct measurement in this case
> should be the gain.  I am satisfied that there has been a loss and a
> loss that is traceable to the original wrongful conduct that qualified
> three individuals for loans.  I am concerned, however, in terms of
> proximate causation or other language to indicate that there have
> definitely been refinancing, including increased principal, at least
> partially based upon subsequent representations concerning ability to
> pay, as well as a real concern of the extent of the loss because of all
> the various expenses involved.  I am confident, however, that I can
> conclude that the wrongful conduct caused the loss, but feel I should
> fall back on the offender's gain from the fraud as the alternative
> estimate that is likely underestimating the loss.  That may well be,
> but I do conclude that that affords me with an alternative basis that's
> linked to the motivation for the defendant's wrongful conduct as
> found by the jury.

10

VIII Aplt. App. at 108-09.  We recognize that the government never requested an enhancement based upon intended loss, however, the district court is required to correctly apply the Guidelines.

In United States v. Haddock, we explained that the loss enhancement "is only for loss to victims, not for gain to defendants.  The defendant's gain may be used only as an 'alternate estimate' of that loss; it may not support an enhancement on its own if there is no actual or intended loss to the victims."  12 F.3d 950, 960 (10th Cir. 1993); see also United States v. Galbraith, 20 F.3d 1054, 1060 (10th Cir. 1994) (finding gain to the defendant could not be used as an alternative estimate of loss when there was no actual or intended loss).  Although Haddock applied § 2F1.1 of the Guidelines, § 2B1.1 adopts the same requirements.  See U.S.S.G. § 2B1.1(b)(1), cmt. n.3(B) (2005) ("The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.") (emphasis added). Accordingly, before using gain as an alternate estimate of loss, the district court must first estimate the actual and intended loss due to a defendant's fraudulent conduct, and then consider whether the defendant's gain is a reasonable estimate of the actual or intended loss.  See Haddock, 12 F.3d at 961.  In reiterating this rule, we are not suggesting that the district court must find the precise amount of the loss, it must only make a reasonable estimate of the loss.  However, in doing so, the district court must make a finding that addresses the various amounts of

11

loss proposed, especially in the case of a moving target like this one. In this case, the proposed amounts of loss ranged from as low as $0 to as high as $122,992.29, and the district court cannot not simply choose to substitute a gain of $29,359.20 as a measure of the loss without a basis for why that substitution is reasonable. The district court simply did not resolve the specific factual disputes concerning whether Mr. Galloway's fraudulent conduct indeed caused a loss and we must therefore remand.

Moreover, even if the district court was correct to estimate HUD's loss using Mr. Galloway's gain, its inclusion of all of Mr. Galloway's commissions, including those on transactions for which the government claimed no loss occurred, was in error. Our precedent makes clear that the use of gain as an estimate of loss must be limited to transactions in which there was indeed a loss. See id. ("If gain to the defendant does not correspond to any actual, intended, or probable loss, the defendant's gain is not a reasonable estimate of loss.").

Accordingly, we remand the case for the district court to vacate Mr. Galloway's sentence and re-sentence. As re-sentencing will proceed de novo, United States v. Ortiz, 25 F.3d 934, 935 (10th Cir. 1994), we find it premature to engage in any analysis of our own concerning the actual or intended loss, if any, caused by Mr. Galloway. Given the ex post facto concerns discussed earlier, on remand the district court must determine Mr. Galloway's sentence under both the 1998 and 2005 version of the Guidelines to determine whether applying the 2005

12

Guidelines would place Mr. Galloway at a disadvantage. If so, the district court must apply the 1998 version of the Guidelines.

B. Restitution Order

We review de novo the district court's application of the Mandatory Victims Restitution Act ("MVRA"), the district court's factual findings for clear error, and the amount of restitution for abuse of discretion. See United States v. Serawop, No. 06-4022, 2007 WL 3121866, at *3, (10th Cir. Oct. 25, 2007). "'An abuse of discretion occurs when, for example, the trial court fails to consider the applicable legal standard upon which its discretionary judgment is based.'" Id. (quoting United States v. Quarrell, 310 F.3d 664, 678 (10th Cir. 2002)). Under the MVRA, the sentencing court must order a defendant convicted of a felony through fraud or deceit to pay restitution to the victims of the defendant's illegal conduct. See 18 U.S.C. § 3663A(a)(1) & (c)(1)(A)(ii). In a restitution order, the district court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A). The government bears the burden of proving the amount of loss, and the district court resolves disputes over the proper amount of restitution by the preponderance of the evidence. See id. § 3664(e).

After concluding that it could estimate the amount of loss by the amount of Mr. Galloway's gain, the district court ordered restitution in that amount.

13

Relying on our decision in United States v. Quarrell, 310 F.3d 664, 680 (10th Cir. 2002), Mr. Galloway argues the district court abused its discretion in using gain to impose restitution, because restitution must be based on actual loss. See Aplt. Br. at 14. The government contends, without citing any authority, that "[h]ad the court determined an actual loss, restitution would have been in that amount," but "[b]ecause the court used the defendant's gain as the loss measure, restitution was properly imposed in the amount of that gain." Aplee. Br. at 16. We agree with Mr. Galloway.

It is well settled that "a restitution order must be based on actual loss." Quarrell, 310 F.3d at 680 (emphasis in original); see also Serawop, 2007 WL 3121866 at *9; United States v. Hudson, 483 F.3d 707, 710 (10th Cir. 2007). As we explained in Quarrell, although gain may be used to determine a defendant's offense level under the Guidelines (if it more closely reflects actual harm than actual loss does), it is not an appropriate estimate of loss when determining the amount of restitution under § 5E1.1 or the MVRA. Quarrell, 310 F.3d at 679-80; see also United States v. Messner, 107 F.3d 1448, 1455 (10th Cir. 1997). Accordingly, the district court should vacate its restitution order on remand and should calculate HUD's actual loss. Of course, the district court may opt out of imposing restitution if it determines "complex issues of fact related to the cause or amount of [HUD's] loss[] would complicate or prolong the sentencing process to a degree that the need to provide restitution to [HUD] is outweighed by the

14

burden on the sentencing process."  18 U.S.C. § 3663A(c)(3)(B); <u>see also</u>

<u>Serawop</u>, 2007 WL 3121866, at *5.  However, if the district court finds HUD

sustained an actual loss, it must impose restitution in that amount.

REMANDED.