**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 31, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVANNA DEAMBER DOTSON, a/k/a
Deamber Dotson, a/k/a Deamber Dobson,
a/k/a Amanda Welch, a/k/a Amber
Bradley, a/k/a Brandi Marie Smith, a/k/a
Deamber Danielle Dotson, a/k/a Alexis,

Defendant – Appellant.

No. 13-7059
(D.C. No. 6:12-CR-00089-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.

This appeal concerns sentencing for adoption fraud. Davanna Dotson told at least

40 adoptive parents in multiple states that she wanted to place her child with them for

adoption. She contacted these prospective parents or their adoption attorneys and

solicited money to facilitate the promised adoption. She was indicted for 22 counts of

wire fraud under 18 U.S.C. § 1343 and pled guilty to one of them.

---

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

At sentencing, the district court determined at least one of Ms. Dotson's victims, Carrie Rowe, was a "vulnerable victim" under the United States Sentencing Guidelines (the "Guidelines"). Based on Ms. Dotson's crime, her criminal history, and the vulnerable victim sentencing enhancement, the district court calculated her Guidelines range at 15 to 21 months and then varied upwards, sentencing Ms. Dotson to 48 months in prison. She appeals, challenging both the procedural and substantive reasonableness of her sentence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.  BACKGROUND

### A. *Arrest, Plea, and Pre-Sentence*

On September 23, 2012, the Muskogee, Oklahoma police arrested Ms. Dotson for adoption fraud and released her on bond. The very next day, Ms. Dotson promised another couple to let them adopt her child and asked them for money.

On November 7, 2012, a federal grand jury in the Eastern District of Oklahoma charged Ms. Dotson with 22 counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341, for conducting an adoption fraud scheme. She pled guilty to one count of wire fraud.

The Pre-Sentence Report ("PSR") calculated Ms. Dotson's offense level under the Guidelines to include a two-level "vulnerable victim" enhancement under U.S.S.G. § 3A1.1(b)(1). This enhancement applies when "the defendant knew or should have known that a victim of the offense was a vulnerable victim," meaning a person "who is

unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) & App. note 2. In addition to the PSR's recommended vulnerable victim enhancement, the Government moved for an upward variance or departure. Ms. Dotson objected to the vulnerable victim enhancement and the Government's motion.

B. *Sentencing Hearing*

The district court held a three-day sentencing hearing, during which the Government presented multiple victim witnesses. The evidence at the hearing established the following facts.

Because Ms. Rowe and her husband were unable to conceive, she hired an adoption facilitator, who matched her with Oklahoma City attorney Julie Demastus to help the couple adopt. Ms. Dotson contacted Ms. Demastus, stating she wanted to put her unborn child up for adoption. After Ms. Dotson reviewed several profiles Ms. Demastus had sent her, she selected the Rowes to adopt her child. The Rowes' profile contained personal details, including Ms. Rowe's diagnosed infertility, their hopes and dreams for a future child, and pictures of the couple and their extended family.

Ms. Demastus started making arrangements for the Rowes to adopt Ms. Dotson's child and met with Ms. Dotson to complete the paperwork. After Ms. Rowe and Ms. Dotson first spoke on May 29, 2009, they talked on the phone up to five or six times a week. Multiple times, Ms. Dotson called Ms. Rowe claiming she was in labor but then called back hours later and stated it was false labor.

On June 25, 2009, an Oklahoma state judge approved Ms. Dotson's adoption-related living and travel expenses of $4,736.70, which Ms. Demastus paid to Ms. Dotson on behalf of the Rowes. After June 25, Ms. Dotson no longer accepted or returned Ms. Rowe's phone calls.

Ms. Dotson gave birth on June 27, 2009, but did not tell the Rowes or Ms. Demastus. Without disclosing she already had given birth, she contacted the social worker whom Ms. Demastus had hired for this case to ask for more money. The social worker went to Ms. Dotson's residence, "knocked on the door, gave her the money, [and] saw her." ROA, Vol. II at 88. Ms. Dotson still looked pregnant, but the social worker "felt a little bit something wasn't right." *Id.* Based on the foregoing, the social worker, Ms. Rowe, and Ms. Demastus searched the Internet and found evidence of Ms. Dotson's past fraud. Ms. Rowe also discovered Ms. Dotson's local hospital listed Ms. Dotson as recently having delivered a baby boy. She then realized Ms. Dotson did not intend to place her baby for adoption.

Ms. Rowe described her reaction to this news:

> Shear [sic] devastation. With infertility, your hope is taken away from you when you can't have children because it's the one thing in the world that you want and you should be able to have and everyone else can. . . .
> That day I got the phone call I was in my office at work, and of course I immediately lost it.

ROA, Vol. II at 89.

## C. *The Sentence*

The district court determined, after hearing "an immense amount of testimony from numerous victims in this case during the initial sentencing hearing," ROA, Vol. II at 266, "that the vulnerable enhancement does apply specifically to at least one victim, Carrie Rowe," *id.* at 268.

The district court found that Ms. Rowe was a vulnerable victim based on Ms. Dotson's "cho[osing] the Rowes over other families as her child's adoptive parents after reviewing the profile they had on record with the law firm." ROA, Vol. II at 268. This profile contained "such intimate details as their situation (which the [district c]ourt reasonably infers as the infertility situation leading them to the adoption process), and about their home, families, hobbies, . . . and activities." *Id.* "During the course of their conduct over a two month period, Mrs. Rowe described the intimate details shared and the relationship built between her and the defendant." *Id.* at 269. The court found "by a preponderance of the evidence that [Ms. Dotson] did, in fact, know of the particular susceptibility of Carrie Rowe to this adoption fraud scheme . . . [and] that Carrie Rowe was, in fact, vulnerable." *Id.* It therefore applied the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1), which increased her offense level by two and increased her Guidelines range from 10 to 16 months to 15 to 21 months.

The district court denied the Government's motion for an upward departure but granted the its motion for an upward variance "based on the nature and circumstances of the offense, and the history and characteristics of [Ms. Dotson], including [her] continued

efforts to defraud through this scheme after her arrest and her lack of remorse, thus indicating [her] increased risk of recidivism." ROA, Vol. II at 273. The district court found "by a preponderance of the evidence that a sentenc[e] within the sentencing range called for by the application of the guidelines does not adequately reflect the goals of sentencing set forth in [18 U.S.C. § ]3553(a)." *Id.* Instead, a sentence "above the advisory guideline range will adequately reflect the seriousness of the offense, provide just punishment for the defendant, afford deterrence to further criminal conduct and protect the public from further crimes of this defendant." *Id.*

The district court sentenced Ms. Dotson to 48 months in prison to be followed by three years of supervised release. Ms. Dotson appeals.

## II. **DISCUSSION**

Ms. Dotson challenges both the procedural and substantive reasonableness of her sentence. "In reviewing [Ms. Dotson's] sentence, we first examine whether the district court correctly determined the advisory guideline sentence range, and if so, we review the sentence for reasonableness." *United States v. Galloway*, 509 F.3d 1246, 1250 (10th Cir. 2007).

### A. *Procedural Reasonableness*

Ms. Dotson argues her sentence is procedurally unreasonable because the district court improperly applied the vulnerable victim sentencing enhancement. She also argues the Government cannot show by a preponderance of the evidence that this error was harmless.

1. **Law and Standard of Review**

"When considering a district court's application of the guidelines, we review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Cherry*, 572 F.3d 829, 831 (10th Cir. 2009) (quotations omitted). Misapplication of the Guidelines is a procedural sentencing error. *See Galloway*, 509 F.3d at 1251. Such an error is reversible unless harmless. *See United States v. Alapizco–Valenzuela,* 546 F.3d 1208, 1215 (10th Cir. 2008) ("A non-harmless error in calculating the Guidelines range renders the sentence unreasonable and entitles the defendant to resentencing."). Error is harmless if the Government can show by a preponderance of the evidence that "the record viewed as a whole clearly indicates the district court would have imposed the same sentence had it not relied on the procedural miscue(s)." *United States v. Kieffer*, 681 F.3d 1143, 1165 (10th Cir. 2012). "[A]n error is not harmless if it requires us to speculate on whether the court would have reached the same determination absent the error." *United States v. Harrison*, 743 F.3d 760, 764 (10th Cir. 2014) (quotations omitted).

2. **Parties' Arguments**

Ms. Dotson argues the district court erroneously applied the enhancement for two reasons. First, she contends the facts did not support the enhancement under Tenth Circuit law. She argues the district court's factual findings that Ms. Dotson "chose" the Rowes and that Ms. Rowe is infertile are insufficient to distinguish Ms. Rowe from other

adoption fraud victims as "*unusually* vulnerable or *particularly* susceptible to the crime committed." Aplt. Br. at 13 (citing *United States v. Proffit*, 304 F.3d 1001, 1007 (10th Cir. 2002)). She further argues Ms. Rowe had a team of professionals, including her attorney and social worker, who insulated her from vulnerability by providing advice, dealing with Ms. Dotson, and handling the financial disbursements.

Second, Ms. Dotson contends the extra-circuit case law on the vulnerable victim enhancement for adoption fraud supports reversal. *See* Aplt. Br. at 18 (citing *United States v. Christiansen*, 594 F.3d 571, 576 (7th Cir. 2010) (upholding vulnerable victim enhancement in adoption fraud case because defendant vetted potential victims to find those who were desperate) and *United States v. Stover*, 93 F.3d 1379, 1386 (8th Cir. 1996) (reversing the enhancement in adoption fraud case because the victim's "heartfelt dreams of having a child" and willingness to "spend such large sums of money . . . did not create the extra need for societal protection")). She argues we should follow *Stover* because *Christiansen* focused on the defendant's extensive screening of victims, which did not occur in this case.

The Government makes three arguments. First, it asserts that Ms. Dotson seeks to create a Tenth Circuit "super-standard" beyond what the Sentencing Commission intended. Aplee. Br. at 18. Second, it cites two extra-circuit cases for the proposition that relying upon professionals does not eliminate vulnerability. *Id*. at 22 (citing *United States v. Milstein*, 401 F.3d 53, 74 (2d Cir. 2005); *United States v. Burgos*, 137 F.3d 841, 844 (5th Cir. 1998)). Third, it argues *Stover* is distinguishable because it applied an older

standard that required the defendant to target the victim for the enhancement to apply. It contends the *Stover* court left the door open for a case like this by stating that "given the proper set of facts, a person's infertility, if known to the defendant, might support a finding of particular susceptibility to adoption-related fraud." Aplee. Br. at 17 (quoting *Stover*, 93 F.3d at 1388)).[1]

3. **Harmless Error**

Although Ms. Dotson's arguments may have merit, we conclude any error was harmless. *See United States v. Mullikin*, No. 13-1290, 2014 WL 3409960, at *1 (10th Cir. July 15, 2014) ("[W]e need not reach the merits of the Defendant's arguments . . . [because] any error was harmless . . . ."). The district court stated "for the record that this is the same sentence the Court would impose if given the broadest possible discretion, and the same sentence the Court would impose notwithstanding any judicial fact finding occurring by adoption of the Presentence Report or at this hearing." ROA, Vol. II at 282. The district court backed up this statement with its evaluation of the § 3553 factors in arriving at the sentence.

This case is different from *United States v. Peña-Hermosillo*, 522 F.3d 1108 (10th Cir. 2008), in which the sentencing court erred in determining the Guidelines range but

---

[1] The Government appears to argue that Ms. Rowe's infertility rendered her a vulnerable victim. Aplee. Br. at 18-21. But it also acknowledges the district court made an individualized rather than a class determination as to Ms. Rowe's vulnerability. *Id.* at 18-19.

stated it would have imposed the same sentence irrespective of the error. *Id*. at 1111-17. We held the court's "perfunctory explanation" for why it would have imposed the same sentence was insufficient to overcome the miscalculation. *Id*. at 1117-18; *see also United States v. Springer*, 315 F. App'x 703, 709 (10th Cir. 2009) (unpublished) ("[In *Peña-Hermosillo*] we . . . considered whether a court's alternative sentence renders its procedural error harmless" but rejected it because "the district court offer[ed] no more than a perfunctory explanation for its alternative holding." (quotations omitted)) (cited for persuasive value under 10th Cir. R. 32.1). By contrast, the district court here fully explained its reasoning behind the sentence.

The district court said it "based [the sentence] on the nature and circumstances of the offense, and the history and characteristics of [Ms. Dotson], including [her] continued efforts to defraud through this scheme after her arrest and her lack of remorse, thus indicating [her] increased risk of recidivism." ROA, Vol. II at 273. The court also explained the sentence "reflects the seriousness of the offense, promotes respect for the law[,] and provides just punishment for the offense." *Id.* at 282. We are not "in the zone of speculation and conjecture" in determining the preponderance of the evidence shows that any "error did not affect the court's selection of the sentence imposed." *United States v. Conlan*, 500 F.3d 1167, 1170 (10th Cir. 2007). Any procedural error the court made in calculating Ms. Dotson's Guideline Range was harmless.

## B. *Substantive Reasonableness*

Ms. Dotson also challenges the substantive reasonableness of her sentence, arguing the district court did not justify the variance.

### 1. **Law and Standard of Review**

"[S]ubstantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the totality of the circumstances." *United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (quotations omitted). "[A] district court's sentence is substantively unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* at 1116.

A "major" variance should have "a more significant justification than a minor one." *Gall v. United States*, 552 U.S. 38, 50 (2007). But "the fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 51. "It is not for [us] to decide de novo whether the justification for a variance is sufficient or the sentence is reasonable, and we must therefore defer not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (quotations omitted).

After calculating the Guidelines range, the district court may choose to impose a sentence above or below the range using either a departure or a variance. "[A] 'departure' is the result of applying Chapters Four or Five of the Sentencing Guidelines,

-11-

whereas a 'variance' is the result of applying the § 3553(a) factors." *United States v.*

*Wiseman*, 749 F.3d 1191, 1193 n.2 (10th Cir. 2014).

2. **No Abuse of Discretion**

The Government moved for an upward departure or variance. The district court

denied the Government's motion for a departure but granted the variance, finding by a

preponderance of the evidence a sentence within the Guidelines range "does not

adequately reflect the goals of sentencing set forth in [18 U.S.C. §] 3553(a)." ROA, Vol.

II at 273. As previously noted, the district court's determination was "based on the

nature and circumstances of the offense, and the history and characteristics of [Ms.

Dotson], including the [her] continued efforts to defraud through this scheme after her

arrest and her lack of remorse, thus indicating the defendant's increased risk of

recidivism." *Id.*[2] The court determined a sentence "above the advisory Guidelines range

will adequately reflect the seriousness of the offense, provide just punishment for the

defendant, afford deterrence to further criminal conduct, and protect the public from

further crimes of this defendant." *Id.*

The calculated Guidelines range, including the vulnerable victim enhancement,

was 15 to 21 months. The district court sentenced Ms. Dotson to 48 months in prison.

---

[2] This referred to Ms. Dotson's post-arrest attempt to defraud Marc and Dawn
Monette. The day after Ms. Dotson was arrested and released on bond, she contacted the
Monettes, claiming she wanted to place a baby girl for adoption. The Monettes sent her
$1,000 to travel from Oklahoma to Ohio, where they lived.

Ms. Dotson argues this was substantively unreasonable because the extent of the variance is not justified by the district court's reasoning, which, she contends, relied exclusively on Ms. Dotson's post-arrest conduct. We disagree.

Despite Ms. Dotson's contention, the district court stated Ms. Dotson's post-arrest conduct was only one factor. The district court heard eight victims testify about the nature of the crime and how it affected their lives. The court also thoroughly evaluated the § 3553(a) factors.

Although the variance imposed here is high with or without the vulnerable victim enhancement, "the fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. Nothing in the record suggests the district court's decision was an abuse of discretion—"arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quotations omitted).

For these reasons, we reject Ms. Dotson's substantive reasonableness challenge.

## III. **CONCLUSION**

We affirm the sentence imposed by the district court.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

-13-