**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WENDY DAWN JOHNSON,

    Defendant - Appellant.

Nos. 23-7047 & No. 23-7066

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CR-00260-JWD-1)**
_____

Kristin M. Kimmelman, Assistant Federal Public Defender (Maureen Scott Franco, Federal Public Defender, Western District of Texas, with her on the briefs), San Antonio, Texas, for Defendant-Appellant.

Luke Rizzo Cascio, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.
_____

Before **MATHESON**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Wendy Johnson pleaded guilty to involuntary manslaughter for causing the death of Stephanie Heneha-Roubidoux in a drunk-driving accident. The government sought criminal restitution for Stephanie's lost income, relying on testimony from its

expert and from Stephanie's wife, Kristi Heneha-Roubidoux.[1] Johnson argued for lost-income restitution of zero because, according to the government's expert, Stephanie would have personally consumed all her income. The district court declined to deduct personal consumption from the restitution award. We conclude that the district court rejected the personal-consumption deduction for a legally incorrect reason. So although we reject Johnson's other challenge to the restitution award, we vacate that award and remand for the district court to reconsider the personal-consumption deduction. And on remand, the district court should also reconsider the payment schedule.

## Background

Early one morning in March 2021, Johnson was driving on a two-lane, rural highway in Eufaula, Oklahoma, when she crossed the median and struck Stephanie's vehicle head-on. Stephanie died at the scene. Johnson had a blood-alcohol content of 0.229, well above the legal limit of 0.08. *See* Okla. Stat. tit. 47, § 11-902(A)(1). Stephanie also was driving drunk; her blood-alcohol content was 0.300.

Johnson pleaded guilty to involuntary manslaughter in Indian country. The district court sentenced her to 36 months in prison and three years of supervised release. It declined to impose a fine, finding that Johnson lacked the financial resources to pay one.

The government requested restitution for Stephanie's lost income and

---

[1] To avoid confusion, we refer to Stephanie and Kristi by their first names.

submitted a supporting expert report from William Clark. Clark's report assumed

Stephanie would continue to earn annual income of $11,500 per year—a number he

reached based on information provided by Kristi, who estimated that Stephanie

earned income between $10,000 and $13,000 per year. Based on $11,500 in annual

income, Clark estimated total lost wages of $218,487 to $282,282 over the course of

Stephanie's life.[2] The government later reduced its request to $208,009 because of a

change in interest rates.

At the restitution hearing, Kristi testified that Stephanie generally earned

between $10,000 and $15,000 per year and about $11,500 in 2020. Based on tax

documents, Kristi testified that Stephanie earned some of her income from working at

McDonald's and some from a tribal stipend. She further explained that Stephanie

earned about $1,000 per month cleaning houses, although Stephanie didn't report this

income for tax purposes. Kristi also testified that Stephanie contributed to their

household by cooking, cleaning, working in the yard, maintaining the cars, taking

care of pets, and caring for Kristi's sick brother.

Clark testified next. Relevant here, Clark addressed the defense expert's

criticism that his estimate of total lost wages of $208,009 over the course of

Stephanie's life did not apply a personal-consumption deduction. He first explained

---

[2] The report also included an alternative and significantly higher lost-wages estimate of approximately $1,000,000, premised on Stephanie completing an associate degree. The government abandoned any request for this higher amount when it discovered that Stephanie had not completed any coursework toward that degree since 2016.

that a personal-consumption deduction represents the amount of income a victim would have spent herself, for her own benefit. He further explained that personal consumption can be deducted from a restitution award because it constitutes funds that would not have been available to a survivor. Though Clark did not apply the personal-consumption deduction in arriving at the $208,009 estimate in his report, he testified that, had she lived, Stephanie would have personally consumed her entire income. And so Clark testified that if he deducted Stephanie's personal consumption, Stephanie's lost income would be zero.

But Clark went on to explain that "the personal[-]consumption deduction is not consistent with the economic view." Supp. R. vol. 3, 47. The economic view, according to Clark, tries to assign a dollar value to every loss: lost income, lost household contributions, employer-paid benefits, and so forth. Clark therefore asserted that, to accurately reflect loss under the economic view, a loss estimate should include a lost-income calculation, a personal-consumption deduction, *and* an estimate of lost household contributions. And the lost household contributions here were considerable; Clark estimated the present value of Stephanie's household contributions at $426,196, far above the amount of her estimated lost wages. So Clark concluded that under this economic view, if the personal-consumption deduction erases a victim's recoverable income but the victim had significant household contributions, then household contributions should be included in the lost-income estimate.

Building on Clark's testimony, the government argued that the district court

4

should not apply the personal-consumption deduction because the deduction "can make things unnecessarily complex." *Id.* at 84. According to the government, this complexity arose because the personal-consumption deduction must be offset with household contributions.

After the evidentiary hearing, the district court concluded that it had sufficient evidence to fashion a restitution award and that the government had shouldered its burden to prove the loss amount by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e). The district court found Kristi credible and relied on her estimates of Stephanie's annual income. It found Clark's $208,009 estimate of Stephanie's lost wages to be conservative and reasonable "[g]iven the nature of Stephanie's jobs during her lifetime and the fact that . . . Clark did not factor in Stephanie's household contributions." Supp. R. vol. 3, 129. The district court acknowledged that the defense expert had criticized Clark's lost-income estimate for failing to deduct Stephanie's personal consumption. But it nevertheless declined to apply the personal-consumption deduction, relying on this court's decision in *United States v. Serawop*, 505 F.3d 1112 (10th Cir. 2007), and Clark's testimony. The court explained that it found "Clark's testimony on why he declined to deduct for personal consumption in this particular case on these facts to be credible." Supp. R. vol. 3, 131. Thus, the district court ordered restitution of $158,009—the $208,009 the government requested minus a $50,000 insurance settlement that Kristi had received.[3]

---

[3] The VWPA provides that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance

5

The district court further found that Johnson had the financial ability to pay restitution, based on her education and job history. It ordered the restitution due immediately, but "[i]f . . . Johnson's financial condition d[id] not allow for immediate payment, the restitution is to be paid in monthly installments of $100 or [ten] percent of . . . Johnson's monthly income, whichever is greater, beginning 60 days after release." *Id.* at 135. Seeking to clarify the payment schedule, defense counsel asked whether the court was "immediately ordering payments while in custody" or whether "payments w[ould] commence 60 days after release from custody." *Id.* at 137. The district court repeated the payment-schedule language, and the government explained that this language is standard. Defense counsel then asked the court to explicitly allow Johnson to begin her payments after release, and the district court declined to do so.

Johnson now appeals.

## Analysis

Johnson challenges both the restitution award itself and the payment schedule. We consider each point in turn.

### I.    Restitution Award

Johnson argues the district court erred when it ordered restitution of $158,009 because it declined to apply a personal-consumption deduction and relied on

---

or any other source be considered in determining the *amount* of restitution."
§ 3664(f)(1)(B) (emphasis added). But neither party has briefed this issue, so we express no view on the propriety of the $50,000 reduction.

unverified, speculative evidence of Stephanie's income. We review "the amount of restitution for an abuse of discretion" and any underlying factual findings for clear error. *United States v. Wilson*, 416 F.3d 1164, 1170 (10th Cir. 2005) (quoting *United States v. Quarrell*, 310 F.3d 664, 676 (10th Cir. 2002)).

"A district court may order criminal restitution only as authorized by federal statute." *United States v. Ferdman*, 779 F.3d 1129, 1131–32 (10th Cir. 2015). The parties agree that the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, provides the necessary statutory authority for restitution here. The VWPA provides that "in the case of an offense resulting in bodily injury to a victim," the district court may order restitution to "reimburse the victim for income lost." § 3663(b)(2)(C). This includes future lost income when the victim dies because of the offense. *Serawop*, 505 F.3d at 1121.[4] And if the victim is deceased, the VWPA allows the victim's estate to assume the victim's rights. § 3663(a)(2).

## A.    Personal-Consumption Deduction

Johnson first argues the district court erroneously declined to apply a personal-consumption deduction because it did so based on a legally incorrect view that a

---

[4] *Serawop* interpreted the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. *See* 505 F.3d at 1114. The VWPA differs in a few ways from the MVRA, but none of those differences matter here because the lost-income provisions of the VWPA are almost identical to the lost-income provisions of the MVRA. *Compare* § 3663(b)(2)(C), *with* § 3663A(b)(2)(C); *see also Serawop*, 505 F.3d at 1117–18 (noting some differences between VWPA and MVRA). We can therefore rely on MVRA cases in this VWPA case. *See United States v. Wilfong*, 551 F.3d 1182, 1185 & n.3 (10th Cir. 2008) (applying VWPA cases in MVRA case because acts contained identical relevant language).

personal-consumption deduction requires the court to also account for lost household contributions. For the reasons explained below, we agree.

We discussed personal-consumption deductions in *Serawop*. 505 F.3d at 1116. The victim there was a three-month-old infant and, given the uncertainties inherent in predicting the infant's future, the court-appointed expert calculated "wide-ranging" estimates of the victim's personal consumption. *Id.* at 1114–15, 1127. The district court found the personal-consumption figures too speculative and—after careful analysis to determine whether rejecting the personal-consumption deduction created a windfall for the victim's estate—declined to apply the personal-consumption deduction. *Id.* at 1128. We affirmed, concluding the district court had not abused its discretion. *Id.* But we suggested that a personal-consumption deduction might be appropriate if the amount is undisputed, easily determined, or nonspeculative. *Id.* at 1128 n.6. As an example, we noted that "if the victim was a 65-year[-]old retiree, an expert might present consumption figures that the district court concludes are not speculative and that may be used to offset a restitution award." *Id.*

Here, the district court recited key portions of *Serawop* and relied in part on that case when it declined to apply the personal-consumption deduction. But it then rejected the personal-consumption deduction without engaging in the analysis we prescribed in *Serawop*: assessing whether the personal-consumption offset is undisputed, easily determined, or nonspeculative and whether rejecting the offset creates a windfall. *See id.* Instead, the district court rejected the personal-consumption offset because it found Clark's $208,009 estimate reasonable based on

8

"the nature of Stephanie's jobs during her lifetime and the fact that . . . Clark did not factor in Stephanie's household contributions." Supp. R. vol. 3, 129. Thus, the district court impliedly held that it could not apply the personal-consumption deduction without also considering Stephanie's household contributions. Indeed, this is the argument the government made when it urged the district court to reject the personal-consumption deduction.

But this is a faulty premise: household contributions do not fall within "lost income" under the VWPA. The VWPA allows victims and their estates to recover for the victim's "income lost." § 3663(b)(2)(C). We have explained that "income lost" means "lost earnings" or "'[w]ages, salary, or other income that a person could have earned if he or she had not . . . died.'" *Serawop*, 505 F.3d at 1121 (quoting *Lost Earnings*, Black's Law Dictionary (8th ed. 2004)). Because no one paid Stephanie for her household contributions, they do not qualify as lost income. Additionally, the VWPA only allows *victims* of bodily injury to recover their lost income, but it's Kristi who lost the value of the household contributions, not Stephanie. To be sure, as the government emphasizes, Stephanie's household contributions had economic value and the loss of those contributions may qualify as economic loss, broadly speaking. But the VWPA doesn't provide restitution for "economic loss"; it authorizes only "reimburse[ment of] the victim for income lost." § 3663(b)(2)(C). The district court thus erred when it rejected the personal-consumption deduction on the grounds that the deduction was not accompanied by a consideration of household contributions—household contributions cannot be part of the lost-income calculation under the

VWPA.[5] *See United States v. Geddes*, 71 F.4th 1206, 1214 (10th Cir. 2023) ("An error of law is per se an abuse of discretion." (quoting *United States v. Ellis*, 23 F.4th 1228, 1238 (10th Cir. 2022))).

On remand, the district court should conduct the analysis that *Serawop* requires: whether the personal-consumption deduction is undisputed, easily determined, or nonspeculative and whether declining to apply it creates a windfall. *See* 505 F.3d at 1124, 1128 n.6. Although Johnson asks us to go further and hold that the district court should have applied a personal-consumption deduction, we decline to do so at this point because the reliability of Clark's personal-consumption figure is a question for the district court (as is the windfall inquiry). So we vacate the restitution order for the district court to consider, on remand, whether to apply a personal-consumption deduction—without improperly factoring household contributions into the analysis.

## B.   Speculative Evidence of Income

Johnson's second challenge to the restitution amount is that the district court erred in relying on speculative estimates of Stephanie's earnings. As we've just discussed, "[a]ny award of future lost income must not be predicated on speculation." *Id.* at 1123 (emphasis omitted) (quoting *United States v. Cienfuegos*, 462 F.3d 1160,

---

[5] Clark's confusing testimony did not help matters. He testified that, in an economic-loss case, he would include both personal consumption and household services. But his testimony about economic loss in wrongful-death cases does not map cleanly onto this criminal-restitution case arising under the VWPA, which authorizes recovery for "income lost," not economic loss. § 3663(b)(2)(C).

1168 (9th Cir. 2006)). That is, a restitution award must "be based on *actual* loss." *Id.* (emphasis added) (quoting *Quarrell*, 310 F.3d at 678). This is so because "the purpose of restitution 'is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.'" *Id.* at 1124 (quoting *United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007)).

Johnson first asserts that because Kristi was not a credible witness, the district court erred in accepting her testimony about Stephanie's earned income. We review a district court's credibility determinations for clear error, and we do not disturb those determinations unless the "testimony is . . . unbelievable on its face." *United States v. Hoyle*, 751 F.3d 1167, 1175 (10th Cir. 2014) (quoting *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th Cir. 2003)). Here, the district court credited Kristi's testimony about Stephanie's income based on Kristi's demeanor at the hearing and Kristi's 15-year relationship with Stephanie. Given the length of their relationship, it is far from unbelievable that Kristi personally observed Stephanie's finances. And although Johnson paints Kristi as untrustworthy based on Kristi's belief that Stephanie would have earned an associate degree—a potentially unfounded belief, given that Stephanie had taken no classes since 2016—we agree with the government that Kristi's optimism about her wife's future is not unbelievable on its face. We see no reason to disturb the district court's credibility finding and subsequent reliance on Kristi's income estimates.

Next, Johnson asserts that because Kristi failed to support her estimates of

11

Stephanie's cash income with documents or any other form of corroboration, the district court based its assessment of Stephanie's yearly income on speculation. But Johnson cites no authority for her view that additional evidence or corroboration was required. Moreover, the district court acknowledged that although additional documentation of Stephanie's wages would have been helpful, certain service-industry workers (like Stephanie) don't always receive wage documentation. Under these circumstances, we conclude the district court didn't err in finding that the government had presented nonspeculative evidence of Stephanie's lost income.

## II.    Payment Schedule

Johnson next argues that the district court failed to set a reasonable payment schedule. We review district-court orders defining the method of paying restitution for abuse of discretion. *See Wilson*, 416 F.3d at 1170.

The VWPA requires the district court to set a manner and schedule for restitution payment based on a defendant's financial situation. § 3664(f)(2). The district court may order "a single, lump-sum payment[ or] partial payments at specified intervals." § 3664(f)(3)(A). Here, despite having found that Johnson did not have the ability to pay a fine, the district court ordered $158,009 in restitution due and payable immediately. The district court also set up a payment schedule providing that "[i]f [Johnson's] financial condition does not allow for immediate payment of the restitution, [she] shall make monthly installments of not less than $100 or [ten percent] of [her] monthly income, whichever is greater, beginning [60] days from [her] release from custody." Supp. R. vol. 2, 70.

12

The district court's order is less than pellucid, and the government's suggestion that this is standard language doesn't resolve this lack of clarity. Because we vacate the restitution order, we need not decide whether the court erred. On remand, we urge the court to carefully consider its obligation to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." § 3664(f)(2).

## III.  Sealing

As a final matter, we address the sealing of Supplemental Record Volume II. Courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). That is why we apply "a 'strong presumption in favor of public access.'" *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)). Parties may rebut this presumption by demonstrating that "countervailing interests heavily outweigh the public interests in access." *Mann*, 477 F.3d at 1149 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

After the district court transmitted this volume under seal, we sua sponte directed the parties to address whether it needs to remain sealed in its entirety. The parties have filed a joint response and agree that pages 1 through 72 need not remain sealed and propose redacting them instead. First, the parties propose redacting the victim's name and the payee's name—that is, Stephanie's name and Kristi's name—within these pages. But they do not provide any countervailing interest that would

13

justify redacting these names. Nor could they; these names appear repeatedly in the publicly filed briefs. We therefore reject the parties' request to redact this information.

Next, the parties propose redacting information about Stephanie's date of death, cemetery, and funeral home, as well as Kristi's address. We agree that this information is private and not of public concern. We thus grant the parties' request to redact these details.

Last, the parties jointly propose that the district court's statement of reasons, which appears at pages 73 through 76, should remain sealed. This document is not for public disclosure, so we grant the parties' request to keep these pages sealed. *See* 10th Cir. R. 11.3(C).

**Conclusion**

We reject Johnson's argument that the district court relied on speculative evidence of Stephanie's income. But the district court should not have rejected the personal-consumption deduction based on the legally erroneous belief that household contributions must be included in a lost-income calculation that also deducts for personal consumption. We therefore vacate the restitution award and remand for the district court to reconsider whether to deduct Stephanie's personal consumption from the restitution award. On remand, the district court should also reconsider its payment schedule. And as a final matter, we grant the parties' request to redact information about Stephanie's date of death, cemetery, and funeral home, as well as Kristi's address, from Supplemental Record Volume II and to keep the district court's

statement of reasons entirely under seal. Within 7 days, the parties shall file a

redacted version of Supplemental Record Volume II consistent with this Opinion.